# United States District Court

FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

---

UNITED STATES OF AMERICA,

V.

# CR 09      0417

MAHER FAYEZ KARA,
MOUNIR FAYEZ KARA
(aka MICHAEL F. KARA)
EMILE YOUSSEF JILWAN,

*MHP*



DEFENDANT(S).

---

# INDICTMENT

VIOLATIONS: 18 U.S.C. § 371 (Conspiracy); 15 U.S.C. §§ 78j(b)
and 78ff, 17 C.F.R. §§ 240.10b-5, 240.10b5-1 and 240.10b5-2, 18 U.
S.C. § 2 (Securities Fraud); 18 U.S.C. § 1505 (Obstruction); and 18
U.S.C. §§ 981(a)(1)(C) and 982, 21 U.S.C. § 853(p),
28 U.S.C. § 2461 (Forfeiture).

---

A true bill.

_____
Foreman

Filed in open court this _____ day of

_____.

_____
Clerk

Bail, $ 16 bail warrants to issue

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT

☐ SUPERSEDING

— OFFENSE CHARGED —

VIOLATION:
See Penalty Sheet Attachment

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:
See Penalty Sheet Attachment

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

— DEFENDANT - U.S —

▶ EMILE YOUSSEF JILWAN

DISTRICT COURT NUMBER

CR 09       0417

— PROCEEDING —

Name of Complaintant Agency, or Person (& Title, if any)

FBI

☐ person is awaiting trial in another Federal or State Court,
give name of court

☐ this person/proceeding is transferred from another district
per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed
which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE

} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

} MAGISTRATE CASE NO.

Name and Office of Person
Furnishing Information on this form   JOSEPH P. RUSSONIELLO

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)   ADAM A. REEVES

— DEFENDANT —

IS *NOT* IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☐ On this charge

5) ☐ On another conviction
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

} ☐ Federal ☐ State

Has detainer been filed?  ☐ Yes  ☐ No
} If "Yes" give date filed

DATE OF ARREST ▶ Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year

☐ This report amends AO 257 previously submitted

— ADDITIONAL INFORMATION OR COMMENTS —

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☒ WARRANT    Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:                    Before Judge:

Comments:

April 21, 2009

## PENALTY SHEET ATTACHMENT

Counts One and Thirty-Six:

18 U.S.C. § 371 (Conspiracy)

Maximum penalty:   5 years imprisonment
$250,000 fine (18 U.S.C. § 3571(b)(3))
3 years supervised release (18 U.S.C. § 3583(b)(2))
$100 special assessment (18 U.S.C. § 3013)

Counts Two through Thirty-Five:

15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5, 240.10b5-1
and 240.10b5-2, 18 U.S.C. § 2 (Securities Fraud)

Maximum penalty:   20 years imprisonment
$5,000,000 fine
3 years supervised release
$100 special assessment

Counts Thirty-Seven and Thirty-Eight:

18 U.S.C. § 1505 (Obstruction)

Maximum penalty:   5 years imprisonment
$250,000 fine
3 years supervised release
$100 special assessment

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT   ☐ SUPERSEDING

─── OFFENSE CHARGED ───

VIOLATION:
See Penalty Sheet Attachment

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:   See Penalty Sheet Attachment

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

─── DEFENDANT - U.S. ───

MAHER FAYEZ KARA

DISTRICT COURT NUMBER

CR 09    0417

─── PROCEEDING ───

Name of Complainant Agency, or Person (& Title, if any)

FBI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. ATTORNEY   ☐ DEFENSE
  } SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
  } MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
  }

Name and Office of Person
Furnishing Information on this form   JOSEPH P. RUSSONIELLO

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)   ADAM A. REEVES

─── DEFENDANT ───

**IS NOT IN CUSTODY**
  Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction   } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution

Has detainer   ☐ Yes   If "Yes"
been filed?    ☐ No    give date filed

DATE OF ARREST   ▸   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY   ▸   Month/Day/Year

☐ This report amends AO 257 previously submitted

─── ADDITIONAL INFORMATION OR COMMENTS ───

PROCESS:
☐ SUMMONS   ☒ NO PROCESS*   ☒ WARRANT       Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:        Before Judge:

Comments:

April 21, 2009

## PENALTY SHEET ATTACHMENT

Counts One and Thirty-Six:

18 U.S.C. § 371 (Conspiracy)

Maximum penalty:    5 years imprisonment
$250,000 fine (18 U.S.C. § 3571(b)(3))
3 years supervised release (18 U.S.C. § 3583(b)(2))
$100 special assessment (18 U.S.C. § 3013)

Counts Two through Thirty-Five:

15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5, 240.10b5-1
and 240.10b5-2, 18 U.S.C. § 2 (Securities Fraud)

Maximum penalty:    20 years imprisonment
$5,000,000 fine
3 years supervised release
$100 special assessment

Counts Thirty-Seven and Thirty-Eight:

18 U.S.C. § 1505 (Obstruction)

Maximum penalty:    5 years imprisonment
$250,000 fine
3 years supervised release
$100 special assessment

AO 257 (Rev. 6/78)

| **DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT** | |

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT
☐ SUPERSEDING

─── **OFFENSE CHARGED** ───

VIOLATION:
See Penalty Sheet Attachment

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY: See Penalty Sheet Attachment

─── **PROCEEDING** ───

Name of Complaintant Agency, or Person (& Title, if any)

FBI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of: ☐ U.S. ATTORNEY ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form   JOSEPH P. RUSSONIELLO

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   ADAM A. REEVES

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

─── **DEFENDANT - U.S** ───

► MOUNIR FAYEZ KARA aka MICHAEL F. KARA

DISTRICT COURT NUMBER

**CR 09      0417**

─── **DEFENDANT** ───

**IS *NOT* IN CUSTODY**
1) ☒ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges _____
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District) _____

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction   } ☐ Federal ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution _____

Has detainer been filed?  ☐ Yes   } If "Yes" give date filed _____
☐ No

DATE OF ARREST   Month/Day/Year _____
Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY   Month/Day/Year _____

☐ This report amends AO 257 previously submitted

─── **ADDITIONAL INFORMATION OR COMMENTS** ───

PROCESS:
☐ SUMMONS ☒ NO PROCESS* ☒ WARRANT   Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____   Before Judge: _____

Comments:

April 21, 2009

PENALTY SHEET ATTACHMENT

Counts One and Thirty-Six:

18 U.S.C. § 371 (Conspiracy)

Maximum penalty:  5 years imprisonment
$250,000 fine (18 U.S.C. § 3571(b)(3))
3 years supervised release (18 U.S.C. § 3583(b)(2))
$100 special assessment (18 U.S.C. § 3013)

Counts Two through Thirty-Five:

15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. §§ 240.10b-5, 240.10b5-1
and 240.10b5-2, 18 U.S.C. § 2 (Securities Fraud)

Maximum penalty:  20 years imprisonment
$5,000,000 fine
3 years supervised release
$100 special assessment

Counts Thirty-Seven and Thirty-Eight:

18 U.S.C. § 1505 (Obstruction)

Maximum penalty:  5 years imprisonment
$250,000 fine
3 years supervised release
$100 special assessment

1  JOSEPH P. RUSSONIELLO (CABN 44332)
2  United States Attorney

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11
   UNITED STATES OF AMERICA,           CR 09          0417
12
          Plaintiff,
13                                      VIOLATIONS: 18 U.S.C. § 371
          v.                            (Conspiracy); 15 U.S.C. §§ 78j(b) and 78ff,
14                                      17 C.F.R. §§ 240.10b-5, 240.10b5-1 and
                                        240.10b5-2, 18 U.S.C. § 2
   MAHER FAYEZ KARA,                    (Securities Fraud);18 U.S.C. § 1505
15 MOUNIR FAYEZ KARA                    (Obstruction); and 18 U.S.C. §§
   (also known as MICHAEL F. KARA), and 981(a)(1)(C) and 982, 21 U.S.C. § 853(p),
16 EMILE YOUSSEF JILWAN,                28 U.S.C. § 2461 (Forfeiture).
          Defendants.
17                                      SAN FRANCISCO VENUE

18

19                  I N D I C T M E N T

20

21      The Grand Jury charges:

22              Relevant Entities and Individuals

23      1.    At all relevant times, Citigroup Global Markets Inc., a wholly owned subsidiary of

24 Citigroup Inc. ("Citigroup"), operated as an investment bank located in New York, New York. A

25 significant portion of Citigroup's business was devoted to advising corporations on various

26 financings and business related transactions.

27      2.    At all relevant times, MAHER FAYEZ KARA was employed as an investment

28
   INDICTMENT

1    banker by Citigroup in the firm's Investment Banking Division in the Healthcare Group and

2    resided in or near New York, New York.

3         3.    At all relevant times, MOUNIR FAYEZ KARA, also known as MICHAEL F.

4    KARA, resided in or near Walnut Creek, California.

5         4.    MAHER FAYEZ KARA and MOUNIR FAYEZ KARA are brothers.

6         5.    At all relevant times, EMILE YOUSSEF JILWAN resided in or near Pleasanton,

7    California.

8

9                         Citigroup's Confidentiality Policy

10        6.    At all relevant times, Citigroup maintained written policies prohibiting the

11   dissemination of material non-public and confidential information relating to pending

12   transactions and financings in which Citigroup was involved.  Throughout his employment at

13   Citigroup, MAHER FAYEZ KARA received repeated training and guidance about the proper use

14   of material non-public and confidential information and the prohibitions against the improper use

15   of such information including violations of the insider trading laws.  For example, MAHER

16   FAYEZ KARA was specifically instructed by Citigroup that:

17            The misuse of material non-public information is a crime.  Under
              U.S. Federal securities laws, misuse of material non-public
18            information can constitute insider trading.

19                        *    *    *    *    *

20            Employees may not: ... Use confidential information or material
              non-public information to trade securities for their own (or related)
21            accounts or to advise relatives, friends or others with respect to
              trading.
22
     As a licensed and trained investment banking professional, MAHER FAYEZ KARA knew and
23
     understood the rules relating to the use of material non-public and confidential information.
24

25                         The Citigroup Inside Information
26
          7.    At various times relevant to this Indictment, Citigroup provided financial and
27

28
     INDICTMENT

                                        2

1 │ investment banking services and advice to Citigroup clients in connection with the confidential

2 │ transactions described below (the "Citigroup Inside Information"):

3 │         a.   Company A: In or about April 2004, Citigroup advised Company A, a public

4 │ company known to the Grand Jury, on a potential sale involving Company B, a public company

5 │ known to the Grand Jury.

6 │         b.   Endo Pharmaceuticals Holdings Inc.: In or about April 2004, Citigroup was

7 │ involved in a secondary equity offering for Endo Pharmaceuticals Holdings Inc. On or about

8 │ August 4, 2004, there was a public announcement relating to this transaction.

9 │         c.   Schering-Plough Corporation: In or about May 2004, Citigroup was

10 │ involved in an equity offering for Schering-Plough Corporation. On or about August 4, 2004,

11 │ there was a public announcement relating to this transaction.

12 │         d.   Pain Therapeutics, Inc.: In or about August 2004, Citigroup was involved in

13 │ an equity offering for Pain Therapeutics, Inc. On or about September 22, 2004, there was a

14 │ public announcement relating to this transaction.

15 │         e.   Company C.: In or about November 2004, Citigroup advised Company C, a

16 │ public company known to the Grand Jury, on a potential sale to Company D, a public company

17 │ known to the Grand Jury.

18 │         f.   Protein Design Labs, Inc. (also known as PDL Biopharma, Inc.): In or about

19 │ January 2005, Citigroup advised Protein Design Labs, Inc. on financing matters relating to an

20 │ acquisition involving ESP Pharma Inc. On or about January 25, 2005, there was a public

21 │ announcement relating to this acquisition. On or about February 7, 2005, there was a public

22 │ announcement relating to this financing.

23 │         g.   Bone Care International, Inc.: In or about April 2005, Citigroup advised

24 │ Bone Care International, Inc. on a sale to Genzyme Corporation. On or about May 4, 2005, there

25 │ was a public announcement relating to this transaction.

26 │         h.   Company E: In or about June 2005, Citigroup advised Company E, a public

27 │ company known to the Grand Jury, on a potential sale involving Company F, a public company

28 │

INDICTMENT

1 known to the Grand Jury.

2         i.    Company H: In or about June 2005, Citigroup advised Company G, a public
3 company known to the Grand Jury, on a potential acquisition involving Company H, a public
4 company known to the Grand Jury.

5         j.    Company I: In or about January 2006, Citigroup advised Company I, a public
6 company known to the Grand Jury, on a potential takeover involving Company J, a public
7 company known to the Grand Jury.

8         k.    Andrx Corporation: In or about January 2006, Citigroup advised Company
9 K, a public company known to the Grand Jury, on a potential acquisition involving Andrx
10 Corporation. On or about March 13, 2006, there was a public announcement relating to Andrx
11 Corporation.

12         l.    HCA, Inc.: In or about June 2006, Citigroup advised Kohlberg Kravis
13 Roberts & Co. LP on a buyout involving HCA, Inc. On or about July 24, 2006, there was a
14 public announcement relating to this transaction.

15         m.    United Surgical Partners International, Inc.: In or about late 2006 to early
16 2007, Citigroup advised Welsh, Carson, Anderson & Stowe on a buyout involving United
17 Surgical Partners International, Inc. (also known as USPI). On or about January 8, 2007, there
18 was a public announcement relating to this transaction.

19         n.    Company M: In or about November 2006, Citigroup advised Company L, a
20 public company known to the Grand Jury, on a potential acquisition involving Company M, a
21 public company known to the Grand Jury.

22         o.    Biosite Incorporated: In or about March 2007, Citigroup advised Beckman
23 Coulter, Inc. about financing relating to an acquisition involving Biosite Incorporated. On or
24 about March 25, 2007, there was a public announcement relating to this transaction.

25         p.    Company O: In or about February 2007, Citigroup advised Company N, a
26 public company known to the Grand Jury, on a potential acquisition involving Company O, a
27 public company known to the Grand Jury.

28 INDICTMENT

4

8. As a result of his employment at Citigroup, MAHER FAYEZ KARA had access to material, non-public information relating to the Citigroup Inside Information. MAHER FAYEZ KARA also had access to material, non-public information relating to other confidential transactions in which Citigroup was involved.

## The Insider Trading Scheme

9. From in or about 2004 through in or about 2007, MAHER FAYEZ KARA, MOUNIR FAYEZ KARA, EMILE YOUSSEF JILWAN and others participated in a scheme to defraud by executing securities transactions based on material, non-public information relating to the Citigroup Inside Information. MAHER FAYEZ KARA regularly and repeatedly called or communicated with MOUNIR FAYEZ KARA and provided MOUNIR FAYEZ KARA with material, non-public information relating to the Citigroup Inside Information and other material, non-public and confidential information.

10. Using the Citigroup Inside Information, MOUNIR FAYEZ KARA and EMILE YOUSSEF JILWAN executed, or caused others to execute, multiple securities transactions in various brokerage accounts based on the Citigroup Inside Information. MAHER FAYEZ KARA, MOUNIR FAYEZ KARA and EMILE YOUSSEF JILWAN benefitted from their participation and the participation of others in this insider trading scheme.

11. Between 2004 and 2007, MAHER FAYEZ KARA, MOUNIR FAYEZ KARA, EMILE YOUSSEF JILWAN generated profits in excess of $5.3 million as a result of this insider trading scheme.

## Investigation by the United States Securities and Exchange Commission

12. At all relevant times, the United States Securities and Exchange Commission (the "SEC") was an independent agency of the United States. The SEC's Division of Enforcement, among other things, investigated possible violations of federal securities laws and regulations and brought administrative and civil actions to enforce those laws and regulations.

INDICTMENT

5

1 ·   13.   In or about April 2007, the SEC commenced an investigation into securities fraud

2   and insider trading relating to purchases and sales of securities issued by Biosite Incorporated.

3   14.   On or about April 30, 2007, attorneys from the SEC's Division of Enforcement

4   conducted a telephone interview of MOUNIR FAYEZ KARA as part of the SEC's investigation

5   into securities fraud and insider trading relating to purchases and sales of securities issued by

6   Biosite Incorporated.

7   15.   On or about April 30, 2007, attorneys from the SEC's Division of Enforcement

8   conducted a telephone interview of EMILE YOUSSEF JILWAN as part of the SEC's

9   investigation into securities fraud and insider trading relating to purchases and sales of securities

10   issued by Biosite Incorporated.

11   16.   MOUNIR FAYEZ KARA and EMILE YOUSSEF JILWAN produced or otherwise

12   provided documents and other materials to the SEC.

13

14   COUNT ONE: 18 U.S.C. § 371 (Conspiracy to Commit Securities Fraud)

15   17.   Paragraphs 1 through 16 are realleged as if fully set forth herein.

16   18.   From in or about 2004 through in or about 2007, in the Northern District of

17   California and elsewhere, the defendants

18                              MAHER FAYEZ KARA,
                            MOUNIR FAYEZ KARA, and
19                            EMILE YOUSSEF JILWAN,

20   and others unlawfully, willfully, and knowingly, did conspire and agree together and with each

21   other to commit an offense against the United States, to wit, securities fraud, in violation of Title

22   18, United States Code, Section 371, and Title 15, United States Code, Section 78j(b) and 78ff,

23   and Title 17, Code of Federal Regulations, Sections 240.10b-5, 240.10b5-1 and 240.10b5-2.

24   19.   It was a part and object of the conspiracy that MAHER FAYEZ KARA, MOUNIR

25   FAYEZ KARA, EMILE YOUSSEF JILWAN and others unlawfully, willfully, and knowingly,

26   directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of

27   the mails, and of facilities of national securities exchanges, used and employed, in connection

28   INDICTMENT

6

1 · with the purchase and sale of securities, manipulative and deceptive devices and contrivances by:

2 (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material

3 fact and omitting to state material facts necessary in order to make the statements made, in the

4 light of the circumstances under which they were made, not misleading; and (c) engaging in acts,

5 practices and courses of business which operated as a fraud and deceit upon members of the

6 investing public and others, in connection with the purchase and sale of securities, in violation of

7 Title 15, United States Code, Section 78j(b) and 78ff, and Title 17, Code of Federal Regulations,

8 Sections 240.10b-5, 240.10b5-1 and 240.10b5-2.

9

10 <u>The Means and Methods of the Insider Trading Conspiracy</u>

11     20.   Among the means and methods by which MAHER FAYEZ KARA, MOUNIR

12 FAYEZ KARA, EMILE YOUSSEF JILWAN and others carried out this insider trading

13 conspiracy were the following:

14     a.   MAHER FAYEZ KARA misappropriated the Citigroup Inside Information

15 in violation of (i) the fiduciary and other duties of trust and confidence that MAHER FAYEZ

16 KARA owed to Citigroup and Citigroup's clients; (ii) the expectations of confidentiality of

17 Citigroup's clients; and (iii) Citigroup's policies and procedures relating to the use and

18 safekeeping of confidential and material, non-public information.

19     b.   MAHER FAYEZ KARA, in breach of his duty of confidentiality to

20 Citigroup and Citigroup's clients, disclosed the Citigroup Inside Information that MAHER

21 FAYEZ KARA had misappropriated from Citigroup and Citigroup's clients to MOUNIR

22 FAYEZ KARA, with the understanding that MOUNIR FAYEZ KARA would use the Citigroup

23 Inside Information to purchase and sell securities, and MAHER FAYEZ KARA thereby received

24 and caused others to receive substantial illegal profits.

25     c.   MOUNIR FAYEZ KARA, while in possession of the Citigroup Inside

26 Information that MOUNIR FAYEZ KARA knew had been misappropriated by MAHER FAYEZ

27 KARA in breach of the duty owed by MAHER FAYEZ KARA and Citigroup to keep such

28 INDICTMENT

7

1   information confidential, purchased and sold securities based on such information and caused
2   others to purchase and sell securities based on such information and thereby received and caused
3   others to receive substantial illegal profits.

4           d.    MOUNIR FAYEZ KARA disclosed some or all of the Citigroup Inside
5   Information that MAHER FAYEZ KARA had misappropriated from Citigroup and Citigroup's
6   clients to EMILE YOUSSEF JILWAN and others, with the understanding that EMILE
7   YOUSSEF JILWAN and others would use, or cause others to use, the Citigroup Inside
8   Information to purchase and sell securities, and MOUNIR FAYEZ KARA thereby received and
9   caused others to receive a benefit including substantial illegal profits.

10           e.    EMILE YOUSSEF JILWAN, while in possession of the Citigroup Inside
11   Information that EMILE YOUSSEF JILWAN knew had been misappropriated by MAHER
12   FAYEZ KARA in breach of the duty owed by MAHER FAYEZ KARA and Citigroup to keep
13   such information confidential, purchased and sold securities based on such information and
14   caused others to purchase and sell securities based on such information and thereby received and
15   caused others to receive a benefit including substantial illegal profits.

16

17                          Overt Acts of the Insider Trading Conspiracy

18       21.    In furtherance of the conspiracy and to effect the illegal object thereof, MAHER
19   FAYEZ KARA, MOUNIR FAYEZ KARA and EMILE YOUSSEF JILWAN committed and
20   caused others to commit the following overt acts, among others, in the Northern District of
21   California and elsewhere:

22           a.    On or about April 23, 2004, approximately 10 securities known as puts in
23   Endo Pharmaceuticals Holdings Inc. were purchased in Fidelity Investments Account X04-
24   150312.

25           b.    On or about May 10, 2004, approximately 30 securities known as calls in
26   Company A were purchased in Charles Schwab Account 6104-7616.

27           c.    On or about May 17, 2004, approximately 40 securities known as puts in

28   INDICTMENT

                          8

1 · Schering-Plough Corporation were purchased in Charles Schwab Account 6104-7616.

2          d.    On or about September 7, 2004, approximately 35 securities known as puts

3 in Pain Therapeutics, Inc. were purchased in Charles Schwab Account 6104-7616.

4          e.    On or about December 2, 2004, approximately 50 securities known as calls in

5 Company C were purchased in Charles Schwab Account 6104-7616.

6          f.    On or about January 24, 2005, approximately 60 securities known as puts in

7 Protein Design Labs, Inc. were purchased in Charles Schwab Account 6104-7616.

8          g.    On or about May 2, 2005, approximately 300 securities known as shares in

9 Bone Care International, Inc. were purchased in Fidelity Investments Account X04-150312.

10          h.    On or about June 21, 2005, approximately 750 securities known as shares in

11 Company E were purchased in Charles Schwab Account 4176-1125.

12          i.    On or about June 27, 2005, approximately 25 securities known as calls in

13 Company E were purchased in Charles Schwab Account 6104-7616.

14          j.    On or about June 27, 2005, approximately 49 securities known as puts in

15 Company F were purchased in Charles Schwab Account 6104-7616.

16          k.    On or about June 29, 2005, approximately 30 securities known calls in

17 Company E were purchased in Charles Schwab Account 6104-7616.

18          l.    On or about July 11, 2005, approximately 50 securities known as calls in

19 Company H were purchased in Charles Schwab Account 6104-7616.

20          m.    On or about July 13, 2005, approximately 500 securities known as shares in

21 Company H were purchased in Charles Schwab Account 4176-1125.

22          n.    On or about February 1, 2006, approximately 100 securities known as calls

23 in Company I were purchased in Charles Schwab Account 6104-7616.

24          o.    On or about February 24, 2006, approximately 140 securities known as calls

25 in Andrx Corporation were purchased in Charles Schwab Account 6104-7616.

26          p.    On or about February 24, 2006, approximately 100 securities known as calls

27 in Andrx Corporation were purchased in Fidelity Investments Account X84-378410.

28 INDICTMENT

1.              q.      On or about March 1, 2006, approximately 285 securities known as shares in
2    Andrx Corporation were purchased in Charles Schwab Account 4176-1125.

3               r.      On or about July 21, 2006, approximately 20 securities known as calls in
4    HCA, Inc. were purchased in Charles Schwab Account 6104-7616.

5               s.      On or about August 8, 2006, approximately 40 securities known as calls in
6    United Surgical Partners International, Inc. were purchased in Charles Schwab Account 6104-
7    7616.

8               t.      On or about September 6, 2006, approximately 50 securities known as calls in
9    United Surgical Partners International, Inc. were purchased in Charles Schwab Account 6104-
10   7616.

11              u.      On or about October 26, 2006, approximately 40 securities known as calls in
12   United Surgical Partners International, Inc. were purchased in Charles Schwab Account 6104-
13   7616.

14              v.      On or about November 9, 2006, approximately 100 securities known as calls
15   in United Surgical Partners International, Inc. were purchased in Charles Schwab Account 6104-
16   7616.

17              w.      On or about  November 13, 2006, approximately 2,500 securities known as
18   shares in United Surgical Partners International, Inc. were purchased in Charles Schwab Account
19   4176-1125.

20              x.      On or about December 15, 2006, approximately 99 securities known as calls
21   in United Surgical Partners International, Inc. were purchased in Charles Schwab Account 6104-
22   7616.

23              y.      On or about January 3, 2007, approximately 105 securities known as calls in
24   United Surgical Partners International, Inc. were purchased in Charles Schwab Account 6104-
25   7616.

26              z.      On or about January 4, 2007, approximately 200 securities known as calls in
27   United Surgical Partners International, Inc. were purchased in Fidelity Investments Account X84-
28   INDICTMENT

10

1. 378410.

2             aa.   On or about February 16, 2007, approximately 100 securities known as calls

3 in Company M were purchased in Charles Schwab Account 6104-7616.

4             bb.   On or about February 16, 2007, approximately 2,000 securities known as

5 shares in Company M were purchased in Charles Schwab Account 4176-1125.

6             cc.   On or about March 22, 2007, approximately 100 securities known as calls in

7 Biosite Incorporated were purchased in Charles Schwab Account 6104-7616.

8             dd.   On or about March 23, 2007, approximately 875 securities known as shares

9 in Biosite Incorporated were purchased in Charles Schwab Account 4176-1125.

10             ee.   On or about March 23, 2007, approximately 51 securities known as calls in

11 Biosite Incorporated were purchased in Charles Schwab Account 1080-2675.

12             ff.   On or about March 23, 2007, approximately 57 securities known as calls in

13 Biosite Incorporated were purchased in Fidelity Investments Account X84-378410.

14             gg.   On or about March 26, 2007, approximately 100 securities known as calls in

15 Company O were purchased in Charles Schwab Account 6104-7616.

16             hh.   On or about April 16, 2007, approximately 1,000 securities known as shares

17 in Company O were purchased in Charles Schwab Account 4176-1125.

18    All in violation of Title 18, United States Code, Section 371.

19

20 COUNTS TWO THROUGH TWENTY-NINE: 15 U.S.C. §§ 78j(b) and 78ff;

21 17 C.F.R. §§ 240.10b-5, 240.10b5-1 and 240.10b5-2; 18 U.S.C. § 2 (Securities Fraud)

22    22.   Paragraphs 1 through 21 are realleged as if fully set forth herein.

23    23.   On or about the dates set forth below, in the Northern District of California and

24 elsewhere, the defendants,

25                 MAHER FAYEZ KARA and
                MOUNIR FAYEZ KARA,

26 willfully, directly and indirectly, by use of the means and instrumentalities of interstate

27

28 INDICTMENT

11

1 · commerce, the mails and the facilities of national securities exchanges, in connection with the
2 purchase and sale of securities, did use and employ manipulative and deceptive devices and
3 contrivances, and aided and abetted others in using and employing manipulative and deceptive
4 devices and contrivances, in violation of Title 15, United States Code, Section 78j(b) and 78ff,
5 and Title 17, Code of Federal Regulations, Sections 240.10b-5, 240.10b5-1 and 240.10b5-2, and
6 Title 18, United States Code, Section 2, by (a) employing devices, schemes and artifices to
7 defraud; (b) making untrue statements of material facts and omitting to state material facts
8 necessary in order to make the statements made, in the light of the circumstances under which
9 they were made, not misleading; and (c) engaging in acts, practices and courses of business
10 which operated and would operate as a fraud and deceit upon persons, to wit, MOUNIR FAYEZ
11 KARA executed or caused others to execute the securities transactions listed below based on
12 material, non-public information and confidential information MOUNIR FAYEZ KARA
13 obtained from MAHER FAYEZ KARA:

| COUNT | TRADE DATE | SECURITY | ACCOUNT | TRADE |
|---|---|---|---|---|
| TWO | May 10, 2004 | Company A | Charles Schwab 6104-7616 | purchased 30 calls |
| THREE | May 17, 2004 | Schering-Plough Corporation | Charles Schwab 6104-7616 | purchased 40 puts |
| FOUR | September 7, 2004 | Pain Therapeutics, Inc. | Charles Schwab 6104-7616 | purchased 35 puts |
| FIVE | December 2, 2004 | Company C | Charles Schwab 6104-7616 | purchased 50 calls |
| SIX | January 24, 2005 | Protein Design Labs, Inc. | Charles Schwab 6104-7616 | purchased 60 puts |
| SEVEN | June 21, 2005 | Company E | Charles Schwab 4176-1125 | purchased 750 shares |
| EIGHT | June 27, 2005 | Company E | Charles Schwab 6104-7616 | purchased 25 calls |
| NINE | June 27, 2005 | Company F | Charles Schwab 6104-7616 | purchased 49 puts |
| TEN | June 29, 2005 | Company E | Charles Schwab 6104-7616 | purchased 30 calls |

INDICTMENT

12

| ELEVEN | July 11, 2005 | Company H | Charles Schwab 6104-7616 | purchased 50 calls |
| TWELVE | July 13, 2005 | Company H | Charles Schwab 4176-1125 | purchased 500 shares |
| THIRTEEN | February 1, 2006 | Company I | Charles Schwab 6104-7616 | purchased 100 calls |
| FOURTEEN | February 24, 2006 | Andrx Corporation | Charles Schwab 6104-7616 | purchased 140 calls |
| FIFTEEN | March 1, 2006 | Andrx Corporation | Charles Schwab 4176-1125 | purchased 285 shares |
| SIXTEEN | July 21, 2006 | HCA, Inc. | Charles Schwab 6104-7616 | purchased 20 calls |
| SEVENTEEN | August 8, 2006 | United Surgical Partners International, Inc. | Charles Schwab 6104-7616 | purchased 40 calls |
| EIGHTEEN | September 6, 2006 | United Surgical Partners International, Inc. | Charles Schwab 6104-7616 | purchased 50 calls |
| NINETEEN | October 26, 2006 | United Surgical Partners International, Inc. | Charles Schwab 6104-7616 | purchased 40 calls |
| TWENTY | November 9, 2006 | United Surgical Partners International, Inc. | Charles Schwab 6104-7616 | purchased 100 calls |
| TWENTY-ONE | November 13, 2006 | United Surgical Partners International, Inc. | Charles Schwab 4176-1125 | purchased 2,500 shares |
| TWENTY-TWO | December 15, 2006 | United Surgical Partners International, Inc. | Charles Schwab 6104-7616 | purchased 99 calls |
| TWENTY-THREE | January 3, 2007 | United Surgical Partners International, Inc. | Charles Schwab 6104-7616 | purchased 105 calls |
| TWENTY-FOUR | February 16, 2007 | Company M | Charles Schwab 6104-7616 | purchased 100 calls |

INDICTMENT

13

| TWENTY-FIVE | February 16, 2007 | Company M | Charles Schwab 4176-1125 | purchased 2,000 shares |
| TWENTY-SIX | March 22, 2007 | Biosite Incorporated | Charles Schwab 6104-7616 | purchased 100 calls |
| TWENTY-SEVEN | March 23, 2007 | Biosite Incorporated | Charles Schwab 4176-1125 | purchased 875 shares |
| TWENTY-EIGHT | March 26, 2007 | Company O | Charles Schwab 6104-7616 | purchased 100 calls |
| TWENTY-NINE | April 16, 2007 | Company O | Charles Schwab 4176-1125 | purchased 1,000 shares |

All in violation of Title 15, United States Code, Section 78j(b) and 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5, 240.10b5-1 and 240.10b5-2; and Title 18, United States Code, Sections 2 and 371.

COUNTS THIRTY THROUGH THIRTY-FIVE: 15 U.S.C. §§ 78j(b) and 78ff;
17 C.F.R. §§ 240.10b-5, 240.10b5-1 and 240.10b5-2; 18 U.S.C. § 2 (Securities Fraud)

24.     Paragraphs 1 through 23 are realleged as if fully set forth herein.

25.     On or about the dates set forth below, in the Northern District of California and elsewhere, the defendants,

MAHER FAYEZ KARA,
MOUNIR FAYEZ KARA and
EMILE YOUSSEF JILWAN,

willfully, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, and aided and abetted others in using and employing manipulative and deceptive devices and contrivances, in violation of Title 15, United States Code, Section 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5, 240.10b5-1 and 240.10b5-2, and Title 18, United States Code, Section 2, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which

INDICTMENT

14

1 . they were made, not misleading; and (c) engaging in acts, practices and courses of business
2 which operated and would operate as a fraud and deceit upon persons, to wit, MOUNIR FAYEZ
3 KARA and EMILE YOUSSEF JILWAN executed or caused others to execute the securities
4 transactions listed below based on material, non-public information and confidential information
5 MOUNIR FAYEZ KARA and EMILE YOUSSEF JILWAN obtained from MAHER FAYEZ
6 KARA:

| COUNT | TRADE DATE | SECURITY | ACCOUNT | TRADE |
|---|---|---|---|---|
| THIRTY | April 23, 2004 | Endo Pharmaceuticals Holdings Inc. | Fidelity Investments X04-150312 | purchased 10 puts |
| THIRTY-ONE | May 2, 2005 | Bone Care International, Inc. | Fidelity Investments X04-150312 | purchased 300 shares |
| THIRTY-TWO | February 24, 2006 | Andrx Corporation | Fidelity Investments X84-378410 | purchased 100 calls |
| THIRTY-THREE | January 4, 2007 | United Surgical Partners International, Inc. | Fidelity Investments X84-378410 | purchased 200 calls |
| THIRTY-FOUR | March 23, 2007 | Biosite Incorporated | Fidelity Investments X84-378410 | purchased 57 calls |
| THIRTY-FIVE | March 23, 2007 | Biosite Incorporated | Charles Schwab 1080-2675 | purchased 51 calls |

All in violation of Title 15, United States Code, Section 78j(b) and 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5, 240.10b5-1 and 240.10b5-2; and Title 18, United States Code, Sections 2 and 371.

COUNT THIRTY-SIX: 18 U.S.C. § 371 (Conspiracy to Commit Obstruction)

26.     Paragraphs 1 through 25 are realleged as if fully set forth herein.

27.     From in or about April 2007 through in or about 2008, in the Northern District of California and elsewhere, the defendants,

INDICTMENT

15

1.

2

MOUNIR FAYEZ KARA and
EMILE YOUSSEF JILWAN,

3 and others unlawfully, willfully, and knowingly, did conspire and agree together and with each

4 other to commit an offense against the United States, to wit, obstruction, in violation of Title 18,

5 United States Code, Sections 371 and 1505.

6          28.     It was a part and object of the conspiracy that MOUNIR FAYEZ KARA, EMILE

7 YOUSSEF JILWAN and others unlawfully, willfully, and knowingly, directly and indirectly,

8 corruptly influenced, obstructed, and impeded, and endeavored to corruptly influence, obstruct,

9 and impede, the proper and due administration of law under which a pending proceeding was

10 being had before a department or agency of the United States, to wit, the SEC and its

11 investigation into securities fraud and insider trading relating to purchases and sales of securities

12 issued by Biosite Incorporated, in violation of Title 18, United States Code, Section 1505.

13

14                       The Means and Methods of the Conspiracy to Obstruct

15          29.     Among the means and methods by which MOUNIR FAYEZ KARA, EMILE

16 YOUSSEF JILWAN and others carried out this conspiracy to obstruct were the following:

17               a.     MOUNIR FAYEZ KARA, EMILE YOUSSEF JILWAN and others

18 communicated about what statements and answers would be given by the conspirators to the SEC

19 in response to its inquiries and questions.

20               b.     MOUNIR FAYEZ KARA, EMILE YOUSSEF JILWAN and others

21 discussed the existence of publicly available documents and other materials, to wit, purported

22 research, analysis, and commentary about publicly traded companies, for the purpose of

23 misleading the SEC about the use of such materials to purchase and sell securities that were the

24 subject of the SEC's investigation.

25               c.     MOUNIR FAYEZ KARA, EMILE YOUSSEF JILWAN and others made

26 false and misleading statements to the SEC during interviews with an intent to corruptly

27 influence, obstruct, and impede the SEC's investigation.

28

INDICTMENT

16

1            d.    MOUNIR FAYEZ KARA, EMILE YOUSSEF JILWAN, and others

2  provided, and attempted to provide, documents and other materials to the SEC, to wit, purported

3  research, analysis and commentary about Biosite Incorporated and other matters, with an intent to

4  corruptly influence, obstruct, and impede the SEC's investigation.

5

6                     The Overt Acts of the Conspiracy to Obstruct

7        30.    In furtherance of the conspiracy and to effect the illegal object thereof, MOUNIR

8  FAYEZ KARA and EMILE YOUSSEF JILWAN committed and caused others to commit the

9  following overt acts, among others, in the Northern District of California and elsewhere:

10            a.    On or about April 30, 2007, MOUNIR FAYEZ KARA made statements to

11  the SEC during a telephone interview.

12            b.    On or about April 30, 2007, EMILE YOUSSEF JILWAN made statements to

13  the SEC during a telephone interview.

14            c.    In or about May 2007, MOUNIR FAYEZ KARA spoke with a person,

15  known to the Grand Jury, about so-called stock research and media broadcasts by Jim Cramer.

16            d.    In or about May 2007, MOUNIR FAYEZ KARA spoke with a second

17  person, known to the Grand Jury, about so-called stock research and media broadcasts by Jim

18  Cramer.

19            e.    Later in 2007, after May 2007, MOUNIR FAYEZ KARA spoke with a third

20  person, known to the Grand Jury, about so-called stock research and media broadcasts by Jim

21  Cramer.

22            f.    On or about July 2, 2008, MOUNIR FAYEZ KARA produced or otherwise

23  provided, or caused others to produce or otherwise provide, documents and other materials to the

24  SEC.

25            g.    On or about August 12, 2008, EMILE YOUSSEF JILWAN produced or

26  otherwise provided, or caused others to produce or otherwise provide, documents and other

27  materials to the SEC.

28

INDICTMENT

17

1 .     All in violation of Title 18, United States Code, Section 371.

2

3    COUNT THIRTY-SEVEN: 18 U.S.C. § 1505 (Obstruction)

4         31.    Paragraphs 1 through 30 are realleged as if fully set forth herein.

5         32.    On or about April 30, 2007, in the Northern District of California and elsewhere,

6    the defendant,

7                              MOUNIR FAYEZ KARA,

8    unlawfully, willfully, and knowingly, corruptly influenced, obstructed, and impeded, and aided

9    and abetted others to corruptly influence, obstruct, and impede, the due and proper administration

10   of the law under which a pending proceeding was being had before a department or agency of the

11   United States, to wit, the SEC and its investigation into securities fraud and insider trading

12   relating to purchases and sales of securities issued by Biosite Incorporated.

13        All in violation of Title 18, United States Code, Sections 1505 and 2.

14

15   COUNT THIRTY-EIGHT: 18 U.S.C. § 1505 (Obstruction)

16        33.    Paragraphs 1 through 32 are realleged as if fully set forth herein.

17        34.    On or about April 30, 2007, in the Northern District of California and elsewhere,

18   the defendant,

19                             EMILE YOUSSEF JILWAN,

20   unlawfully, willfully, and knowingly, corruptly influenced, obstructed, and impeded, and aided

21   and abetted others to corruptly influence, obstruct, and impede, the due and proper administration

22   of the law under which a pending proceeding was being had before a department or agency of the

23   United States, to wit, the SEC and its investigation into securities fraud and insider trading

24   relating to purchases and sales of securities issued by Biosite Incorporated.

25        All in violation of Title 18, United States Code, Sections 1505 and 2.

26

27

28
     INDICTMENT

                                        18

1 ·                          FORFEITURE ALLEGATION

2          35.    Paragraphs 1 through 34 are realleged as if fully set forth herein and by this

3     reference fully incorporated herein for the purpose of alleging forfeiture pursuant to the

4     provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States

5     Code, Section 2461.

6          36.    Upon a conviction of any of the offenses alleged in Counts One through Thirty-

7     Eight, the defendants,

8
                                    MAHER FAYEZ KARA,
9                                MOUNIR FAYEZ KARA, and
                                  EMILE YOUSSEF JILWAN,
10
      shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C)
11
      and Title 28, United States Code, Section 2461, all right, title and interest in property, real and
12
      personal, involved in said violations as alleged in Counts One through Thirty-Eight of this
13
      Indictment, including but not limited to the following property:
14
                  a.     a sum of money equal to approximately $5.3 million, representing the
15
      amount of proceeds obtained as a result of the offenses alleged in Counts One through Thirty-
16
      Eight, and
17
                  b.     real property located at 616 Sugarloaf Court, Walnut Creek, Contra Costa
18
      County, California, 94596-6354 (Assessors Parcel Number 187-020-080-3).
19
           37.    If any of the above-described forfeitable property, as a result of any act or omission
20
      of the defendants:
21
                  a.     cannot be located upon the exercise of due diligence;
22
                  b.     has been transferred or sold to, or deposited with, a third party;
23
                  c.     has been placed beyond the jurisdiction of the Court;
24
                  d.     has been substantially diminished in value; or
25
                  e.     has been commingled with other property which cannot be divided without
26
           difficulty;
27

28
      INDICTMENT

                                               19

1  any and all interest defendant has in any other property, up to the value of the property described

2  in paragraph 36 above, shall be forfeited to the United States, pursuant to Title 21, United States

3  Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

4      All in violation of Title 15, United States Code, Section 78j(b) and 78ff; Title 17, Code of

5  Federal Regulations, Sections 240.10b-5, 240.10b5-1 and 240.10b5-2; Title 18, United States

6  Code, Sections 2, 371 and 981(a)(1)(C); Title 21, United States Code, Section 853(p); and Title

7  28, United States Code, Section 2461.

8

9  DATED: April 21, 2009

10

11                 A TRUE BILL

12

13

14

15                 FOREPERSON

16

17  JOSEPH P. RUSSONIELLO
    United States Attorney

18

19

20

21  BRIAN J. STRETCH
    Chief, Criminal Division

22

23  Approved as to form:

24

25

26

    ADAM A. REEVES
27  Assistant United States Attorney

28

    INDICTMENT

                      20