Pages 1 - 56

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Bernard Zimmerman, Judge

United States of America,     )
                              )
          Plaintiff,          )
                              )
  VS.                         )         NO. CR 09-0417 MHP
                              )
Maher Fayez Kara, Mounir      )
Fayez Kara, and Emile         )
Youssef Jilwan,               )
                              )
          Defendants.         )
_____)
                          San Francisco, California
                          Thursday, April 30, 2009

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**
**RECORDING**

**APPEARANCES:**

For Plaintiff:
                    JOSEPH P. RUSSONIELLO
                    United States Attorney
                    450 Golden Gate Avenue
                    San Francisco, California  94102
          BY:  **ADAM A. REEVES**
               **ASSISTANT UNITED STATES ATTORNEY**


For Defendant Maher Fayez Kara:
                    MORRISON & FOERSTER
                    425 Market Street
                    San Francisco, California  94105-2482
          BY:  **STEPHEN P. FRECCERO**
               **ATTORNEY AT LAW**

          **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

TRANSCRIBED BY:        Kelly L. Bryce
                    Court Reporter Pro Tem

          Computerized Transcription By Eclipse

```
 1   APPEARANCES:  (CONTINUED)

 2   For Defendant Mounir Fayez Kara:
                              KEKER & VAN NEST
 3                            710 Sansome Street
                              San Francisco, California  94111
 4                  BY:  ELLIOT REMSEN PETERS
                         ATTORNEY AT LAW
 5
     For Defendant Emile Youssef Jilwan:
 6                            LAW OFFICE OF WILLIAM H. GREEN
                              2 Wanda Way
 7                            Martinez, California 94553
                    BY:  WILLIAM H. GREEN
 8                       ATTORNEY AT LAW

 9   Also Present:        CAROL MENDOZA, Pretrial Services
                          SUSAN GRAY, United States Asset
10                        Forfeiture Unit
                          MARIAM KARA
11                        MARIE JILWAN

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>Thursday - April 30, 2009</u>                                    10:02 a.m.

 

        **THE CLERK:**  Calling Criminal 09-0417, U.S.A. versus Maher Fayez Kara, Mounir Fayez Kara, and Emile Youssef Jilwan.

        **THE COURT:**  Let's take it one step at a time.  Let's take appearances first.

        **MR. REEVES:**  Good morning, Your Honor.  Adam Reeves for the United States.

        **THE COURT:**  Mr. Reeves.

        So, let's see, who is Maher Fayez Kara?

        **DEFENDANT MAHER FAYEZ KARA:**  I am, Your Honor.

        **THE COURT:**  All right.  And who's representing you?

        **MR. FRECCERO:**  Your Honor, I'm making a special appearance.  Stephen Freccero on behalf of Maher Kara.

        **THE COURT:**  Special appearance?

        **MR. FRECCERO:**  Yes, Your Honor.

        **THE COURT:**  How long is it going to be?  How much time do you need to decide?  At some point you're going to have to make a general appearance.

        **MR. FRECCERO:**  I understand that, Your Honor.  He surrendered this morning.  My partner contacted me to make this appearance.  I would ask for, I think, a week or so.

        **THE COURT:**  All right.  Well, let me just have that in mind --

        **MR. FRECCERO:**  Yes, Your Honor.

1          **THE COURT:**  -- because it will depend on what

2    dates -- what the next dates I say.  So you think you need a

3    week.

4          All right.  Then who is Mounir Fayez Kara?

5          **DEFENDANT MOUNIR FAYEZ KARA:**  I am, Your Honor.

6          **THE COURT:**  All right.  And --

7          **MR. PETERS:**  Your Honor, good morning.  I'm Elliot

8    Peters.  I'm appearing specially, also, on behalf of Michael

9    Kara.

10          **THE COURT:**  All right.

11          **MR. PETERS:**  We just learned of this Indictment

12    yesterday afternoon, and --

13          **THE COURT:**  Just hold on for a minute.  You said

14    Michael Kara.  Is Mounir Fayez known as Michael?

15          **MR. PETERS:**  He is, Your Honor.

16          **THE COURT:**  All right.  Okay.  How long will you

17    need to make your arrangements?

18          **MR. PETERS:**  Well, Your Honor, my understanding from

19    speaking to Mr. Reeves is that he plans to ask for the first

20    appearance in front of Judge Patel on May 18th.  That's fine

21    with us.  We've also discussed this speedy trial exclusion

22    until then, and I'd ask for, then, May 18th.

23          **THE COURT:**  I don't think that's going to work,

24    because if you show up here on May 18th and you say you're not

25    representing him, then everything falls apart.  So we'll have

1    to think of something else.

2                Let's see, then that means this gentleman must be

3    Emile Youssef Jilwan.

4                **DEFENDANT JILWAN:**  Yes, Your Honor.

5                **THE COURT:**  And who's representing him?

6                **MR. GREEN:**  Bill Green representing Mr. Jilwan.  And

7    I'm making a general appearance, so I'm here for the duration.

8                **THE COURT:**  All right.  All right.

9                Well, look, folks, you are here because the Grand

10   Jury of this District has indicted you on a series of crimes.

11   And this morning -- are they in custody?

12               **MR. PETERS:**  They surrendered this morning,

13   Your Honor.

14               **THE COURT:**  They've surrendered, but I'm just -- but

15   they are in custody right now?  Does some agent have custody of

16   them?

17               **ALL:**  Yes, Your Honor.

18               **THE CLERK:**  The Government needs to unseal the

19   Indictment.

20               **THE COURT:**  Ah, I understand I have to entertain a

21   sealing motion.

22               **MR. REEVES:**  An unsealing motion, Your Honor.

23               **THE COURT:**  Unsealing motion.

24               **MR. REEVES:**  Yes, Your Honor, at this time the

25   United States moves to unseal Indictment Number CR 09-0417, and

1    we also move to unseal the related Case Number 3-09-70365,

2    which pertains to the asset seizure warrants obtained in

3    connection with this Indictment.

4                 **THE COURT:**  Any objection?

5                 **ALL:**  No, Your Honor.

6                 **THE COURT:**  All right.  The Government's motions,

7    then, will be granted.  This matter is unsealed.

8                 Now, folks, this morning I'm going to advise you of

9    the charges, but before I do that, I'm going to advise you of

10   some of your constitutional rights.

11                Each of you has the right to remain silent.  That

12   means you don't have to say anything to anyone who works for

13   the Government.  You don't have to say anything in court or out

14   of court, but anything you do say may be used against you.

15                Now, for the record, let's start with Maher.  What

16   is your full true name?

17                **DEFENDANT MAHER FAYEZ KARA:**  Maher Fayez Kara.

18                **THE COURT:**  And your age, sir?

19                **DEFENDANT MAHER FAYEZ KARA:**  37 years old,

20   Your Honor.

21                **THE COURT:**  All right.  And then we'll go over to

22   Michael.  What is your full true name?

23                **DEFENDANT MOUNIR FAYEZ KARA:**  Mounir Fayez Kara.

24                **THE COURT:**  And your age, sir?

25                **DEFENDANT MOUNIR FAYEZ KARA:**  48.

```
 1              THE COURT:  All right.  And I'm just -- I guess I
 2   would address you folks as Mr. Kara.  Kara is the last name?
 3              DEFENDANT MAHER FAYEZ KARA:  Yes, sir.
 4              THE COURT:  All right.  And then that brings us to
 5   Mr. Jilwan.  What is your full true name?
 6              DEFENDANT JILWAN:  Emile Youssef Jilwan.
 7              THE COURT:  And your age, sir?
 8              DEFENDANT JILWAN:  54.
 9              THE COURT:  54.
10              All right.  Now each of you is entitled to be
11   represented by an attorney at all stages of the proceeding,
12   both in court and out of court.  So Mr. Jilwan has an attorney.
13   Mr. Green has entered a general appearance.
14              Here's what I'm going to do with respect to
15   Mr. Freccero and Mr. Peters:  I'm going to -- let's see, today
16   is the 30th.  I'll give you -- well, I guess one week will
17   work.  I'll give you to May 7th to file a general appearance.
18   You can do that in writing.  If you don't file a general
19   appearance, then what I'll do is, we'll bring it back the next
20   week before Judge Larson.  We'll have to sort out the issue.
21   Because, as I understand it, you have a date -- you have agreed
22   to a date before Judge Patel of when?
23              MR. REEVES:  Yes, Your Honor.
24              THE COURT:  May 18th?
25              MR. REEVES:  The Government will be requesting
```

1     May 18th for the initial appearance in the District Court.  If

2     it assists the Court, we had a proposal with regard to the

3     actual posting of the bond that we're going to request here

4     that may necessitate another appearance in the Magistrate

5     Court, and that could be another date for the general

6     appearance to be filed.

7            **THE COURT:**  I'm just trying to work things out so I

8     minimize the number of times everybody has to go to court.  So

9     what I'm suggesting is that I will ask everybody to file a --

10    everybody meaning Mr. Freccero and Mr. Peters -- a general

11    appearance by May 7th.  Failing that, I'll put it on Judge

12    Larsen's calendar for the next week.  And then let's just say

13    for today, I'll put it on for May 11th.

14           **MR. REEVES:**  Okay.

15           **THE COURT:**  And then we can sort out the appointment

16    issues.  If folks can't make a general appearance by then,

17    someone they want to seek appointment, I don't know what, the

18    client may want to bring in different counsel, but I need to

19    get those issues sorted out before you show up upstairs.

20           **MR. REEVES:**  That sounds fine, Your Honor.  Thank

21    you.

22           **THE COURT:**  So let's explain the charges to them.

23    And I'm going to ask, Mr. Reeves, for your assistance because

24    this is -- are all of these folks charged -- first of all, has

25    everybody seen the Indictment?

1          **MR. PETERS:**  We have, Your Honor.

2          **MR. FRECCERO:**  We have, Your Honor.

3          **MR. GREEN:**  As of this morning, yes.

4          **THE COURT:**  All right.  Are they all charged in all

5     of the charges?

6          **MR. REEVES:**  Well, generally speaking, yes.

7          **THE COURT:**  Would you mind telling -- so if they're

8     all charged, perhaps you can just take them through.  I know

9     it's kind of an insider-trading scheme, but there are 30 some

10    charges --

11         **MR. REEVES:**  I'd be happy to.

12         **THE COURT:**  -- so you can probably take them through

13    more quickly than I can.

14         **MR. REEVES:**  Okay.  Count 1 is an overall conspiracy

15    charge charging insider trading, specifically securities fraud,

16    in violation of 15 USC, Section 78ff, and other federal penal

17    statutes.

18         Counts 2 through 35 are substantive counts of

19    securities fraud.

20         And Counts 37 and 38 relate to obstruction by Mounir

21    Kara and Emile Jilwan.

22         And Count 36 relates to a conspiracy to obstruct

23    charging Mounir Kara and Emile Jilwan.

24         **THE COURT:**  So those are the only defendants in 36,

25    37, and 38?

1              **MR. REEVES:**  That's correct, Your Honor.

2              **THE COURT:**  Okay.

3              **MR. REEVES:**  Would you like me to describe or make a

4      record about the maximum penalties?

5              **THE COURT:**  Let me just take a look.

6              All right.  Folks, just, again for the record, the

7      Counts 2 through 29, which are the securities fraud counts, or

8      at least some of them, charges you with violations of Title 15,

9      United States Code, Sections -- well, let me just find out.

10             Does anybody want a detailed reading of these

11     charges, or will you waive further reading of the Indictment?

12             Let's go -- let's start with Maher.

13             **MR. FRECCERO:**  Your Honor, on behalf of Maher Kara,

14     we would waive detailed reading at this time.

15             **THE COURT:**  I will tell them what the penalties are,

16     but I wanted to know how much more detail we need to go into.

17             How about Michael?

18             **MR. PETERS:**  We also waive the detailed reading of

19     the Indictment.

20             **THE COURT:**  And on behalf of Mr. Jilwan?

21             **MR. GREEN:**  Waive formal reading.

22             **THE COURT:**  All right.  Then we don't have to get

23     into any further details.  I'll just tell you, folks, it's a

24     very lengthy Indictment, and I will just tell you there's a lot

25     of detail in terms of dates and securities involved, and so on.

1        Now, why don't you take them through the maximum

2   penalties.

3            **MR. REEVES:**  Yes.  The maximum penalties --

4            **THE COURT:**  Actually, if the penalty sheet is

5   correct, I can do that probably more easily.

6            **MR. REEVES:**  I hope it's correct, yeah.

7            **THE COURT:**  Counts 1 and 36 -- so 1 is the general

8   conspiracy count, and the second one is the conspiracy with

9   respect to the obstruction, which only charges Mr. Jilwan, I

10  think, and --

11           **MR. REEVES:**  Mr. Mounir Kara.

12           **THE COURT:**  -- Mr. Mounir Kara.

13       The penalties, if you were convicted of that charge,

14  of either of them, Counts 1 or 36, you face up to five years in

15  prison, a three-year term of supervised release following any

16  term of imprisonment, a $250,000 fine, and a mandatory $100

17  special assessment.

18       On Counts 2 through 35, those are what we've been

19  calling the securities fraud counts, if convicted on any one of

20  them, you face up to 20 years in prison, a three-year term of

21  supervised release following any term of imprisonment, a

22  500,000 -- a 5 million -- a fine of up to $5 million, and $100

23  mandatory special assessment.

24       Now, on Counts 37 and 38 which, again, pertain to

25  Mr. Jilwan and Mounir Kara, that's the -- the maximum penalty

1  if you are convicted on either of those counts is five years in

2  prison, up to three years supervised release, a $250,000 fine,

3  and $100 special assessment.

4        In addition, if any of you -- well, all right, you

5  are in custody.  If any of you gentleman are not a United

6  States citizen, you're entitled to have your country's consular

7  representative notified of your custodial situation.  And any

8  conviction of these charges may have immigration consequences,

9  such as deportation.  So if that applies to any of you, you

10  should discuss that with your attorney.

11        How far -- are the parties prepared to plead this

12  morning?

13        **MR. GREEN:**  Yes.

14        **THE COURT:**  All right.  Well, let's -- okay.  Let's

15  start with Mr. Jilwan since you've entered a general

16  appearance.

17        How does he plead?

18        **MR. GREEN:**  His plea is not guilty.

19        **THE COURT:**  All right.  A not guilty plea will be

20  entered on his behalf as to all counts with which he is

21  charged.  And, so, the setting date will be May 18th before

22  Judge Patel.  Am I correct?

23        **MR. REEVES:**  Yes, please.

24        **THE COURT:**  All right.  Now, how about Michael?

25        **MR. PETERS:**  We enter a plea of not guilty,

1  Your Honor.

2          **THE COURT:**  All right.  A not guilty plea will be

3  entered on his behalf, same setting date.

4          And Maher?

5          **MR. FRECCERO:**  Not guilty, Your Honor.

6          **THE COURT:**  All right.  So we have not guilty pleas

7  entered on behalf of each defendant as to each count that

8  charges that defendant with a crime.  You have a date before

9  Judge Patel, May 18th at 10:00 a.m.

10         Now, what is the Government's position on their

11 release or detention?

12         **MR. REEVES:**  The Government is requesting a

13 100,000-dollar fully secured bond for each defendant.

14 Your Honor, this is a $5.3 million fraud as alleged in the

15 Indictment.

16         The Government has conducted an extensive

17 investigation of the financial circumstances of the defendants,

18 and we think that this amount of money would balance any

19 possible hardship against the necessity for reasonably assuring

20 that they would return to court when they're required to do so.

21         I've discussed this with counsel beginning yesterday

22 afternoon, and it's my hope this is an appropriate amount.

23         I also leave open the possibility that the bond be

24 executed today, but that the money be posted in approximately

25 one week, because there are -- there are asset seizure issues

1    that I'm prepared to address if the Court would like me to, but

2    which also touch on the availability of funds for the

3    defendants for this bond.

4              **THE COURT:**  What do you mean by a fully secured

5    bond?  What's the security?

6              **MR. REEVES:**  It would be cash, or a home, or cash

7    put up by a relative.

8              **THE COURT:**  What do I know -- I guess my first

9    impression is it strikes me as an awfully low bond, but let's

10   find out.

11             What do we know about these, folks?  Any of them

12   have a criminal record?

13             **MR. REEVES:**  There's an arrest record for certain of

14   them, but no convictions, Your Honor.  And the Government is

15   not relying on prior criminal history in setting the -- or

16   making its request for conditional release here.

17             **THE COURT:**  Are they continue -- I think I signed

18   the arrest -- I'm sorry, the search warrants, as I recall,

19   originally on this case, so I know something about this matter,

20   the sums involved.

21             **MR. REEVES:**  The asset seizure warrants, yes.

22             **THE COURT:**  The asset seizure warrants.

23             What -- are these folks still employed as they were?

24             **MR. REEVES:**  As to Maher Kara, not.  My

25   understanding is he is not currently employed.  He had a career

1    on Wall Street; but, you know, counsel may need to illuminate

2    us further about his circumstances.

3              I believe Mr. Mounir Kara is a consultant and

4    self-employed largely; but, again, we may require further

5    detail from the defendants if they want to provide it.

6              And I believe that Mr. Jilwan is fully employed in

7    the South Bay.

8              **THE COURT:**  Any of them employed in a position where

9    they can continue to engage in the kind of conduct they're

10   accused of engaging in?

11             **MR. REEVES:**  I do not think so, Your Honor, based on

12   what I know.

13             **THE COURT:**  Are they all United States' citizens?

14             **MR. REEVES:**  Yes, they are.  To the best of my

15   information, yes.

16             **THE COURT:**  So the notion is that they're each going

17   to post, what, $100,000 in cash today?

18             **MR. REEVES:**  If they're able to do it today, yes; or

19   if they need some time to resolve some of the uncertainty

20   raised by what assets have been seized, then we would allow

21   them a week in order to post the actual cash securing the bond.

22             **THE COURT:**  Well, let me find out from the

23   defendants what they have in mind.  I'm troubled here a little

24   bit.

25             Let's start with -- well, let's see, I've got

1   Maher's in front of me.  What sort of security is being

2   proposed here?

3           MR. FRECCERO:  Your Honor, on behalf of Maher Kara,

4   we would be prepared today, in fact have come to court with a

5   bank certified check in the amount of $100,000 to deposit with

6   the Clerk of the Court to secure his release.

7           I will add that Mr. Kara has been aware of the

8   investigation for some time now.  There's no evidence at any

9   time that he attempted to flee the jurisdiction.  He has a wife

10  and family here.

11          THE COURT:  They live at this Walnut Creek address?

12          MR. FRECCERO:  No.  The San Carlos address,

13  Your Honor.

14          THE COURT:  Oh, I'm sorry.  I picked up the wrong

15  bond form.  San Carlos address.

16          And how long has he lived in this District, in the

17  Bay Area?

18          MR. FRECCERO:  That I do not know.

19          DEFENDANT MAHER FAYEZ KARA:  I lived in New York,

20  Your Honor, until 2007 and I moved to San Carlos related to my

21  job in 2008.  I was employed with Lehman Brothers and I moved

22  out here to work with them.

23          THE COURT:  Are you employed currently?

24          DEFENDANT MAHER FAYEZ KARA:  No, sir.  No,

25  Your Honor.

1          **THE COURT:**  All right.  So I guess his ties with

2     this District are about a year or two old.

3          **DEFENDANT MAHER FAYEZ KARA:**  I did grow up in the

4     San Francisco area, Your Honor.

5          **THE COURT:**  Oh, all right.  I can understand why you

6     came back from New York.

7          All right.  So what is Michael prepared or proposing

8     to post as security?

9          **MR. PETERS:**  Your Honor, we've known of the

10    investigation -- just by way of a little bit of background that

11    may be helpful, Mr. Kara has known of this investigation for

12    over a year.  We've been in touch with Mr. Reeves and the SEC.

13    We learned yesterday afternoon of the Indictment.  He presented

14    himself to the FBI at 7:30 this morning.

15         He owns a -- he runs a business, an environmental

16    consulting business, in the Walnut Creek area.  He lives in

17    Walnut Creek where he owns a home.

18         We're happy to secure the bond, but there's some

19    uncertainty, and I've discussed this with Mr. Reeves, because

20    we don't know what assets of his they've seized; bank accounts,

21    his home.  He has a home with equity in the seven figures --

22         **THE COURT:**  Well, you'll know that very soon because

23    I've un -- you're going to give them all that information.

24         **MR. REEVES:**  I am and I'm prepared to make a record

25    now.  The United States will be filing a lis pendens as to

1   Mr. Mounir Kara's home in Walnut Creek today.

2                   THE COURT:  Well, if you file a lis pendens, as a

3   practical matter, that's going to tie it up.

4                   MR. PETERS:  Yeah.  It makes it difficult for us.

5   We'd be happy to post any of his assets because Mr. Kara is

6   here and he is going to deal with the situation, but it's

7   difficult for us to know what he can't -- what's available.

8   We'd be happy to have his wife cosign.  He'll sign.  He's

9   coming to court to deal with the situation, and we'd like to

10  work that out.

11                  THE COURT:  No, it's just -- the issues I'm dealing

12  with transcend you.  I mean, oftentimes on charges that are

13  less serious than these, the Government is seeking either

14  detention or much higher bail amounts.  I don't remember the

15  last time I issued -- well, I've issued $100,000 bonds before,

16  but usually not when these kinds of amounts are at issue.

17                  So for the proposal, I guess, in your instance

18  today, it doesn't seem like posting the house is going to make

19  any sense.  The Government is filing a lis pendens, so you're

20  going to tie it up as well as I could.

21                  So what would the Government propose with respect to

22  Michael?

23                  MR. REEVES:  Well, first, can I address the Court's

24  comment here?

25                  The Government has conducted a fairly significant

1    investigation of the assets, and we are not -- we are trying to

2    balance the need for a reasonable assurance that they return to

3    court against the amount of assets that are -- would be

4    unencumbered, and that was how we arrived at that number.  We

5    think it's an appropriate number.

6            For Mr. Mounir Kara, in addition to the lis pendens

7    that will be filed as to his home, there are seizure warrants

8    as to two of his accounts at Charles Schwab.  I can give those

9    account numbers.  They are --

10           **THE COURT:**  I don't know that we need to do numbers

11   in open court, unless you don't know what they are.

12           **DEFENDANT MOUNIR FAYEZ KARA:**  That's fine.

13           **THE COURT:**  Well, why don't you just show him the

14   number.  I'm very sensitive to the notion of just putting

15   things like account numbers on the public record.  You know,

16   we've got lots of folks here.  I don't know who they all are.

17           **MR. REEVES:**  However, you want to proceed, I'm happy

18   to --

19           **THE COURT:**  Give them the last three numbers or

20   something.  I think they'll figure it out.

21           **MR. REEVES:**  It's 125 and the second one is 616.

22           **THE COURT:**  Okay.

23           Well, what would you suggest I do with him today?  I

24   can't require him to post his property.  If his wife is here, I

25   guess I would accept her signature, but what I would also

1    require her to do is surrender her passport.

2                     **MR. REEVES:**  That would be fine with the Government,

3    Your Honor.

4                     **THE COURT:**  I'm going to require each of these folks

5    to surrender their passports.

6                     **MR. PETERS:**  Your Honor, we did that.

7                     **MR. FRECCERO:**  We did that.

8                     **MR. GREEN:**  We did that this morning.

9                     **THE COURT:**  You did that this morning.  So who has

10   the passports right now?

11                    **ALL:**  The FBI.

12                    **THE COURT:**  The FBI.  All right.  Well, you'll at

13   some point probably have to pick up one more passport.

14                    Now let's turn around to Mr. Jilwan.  What is being

15   proposed as security there?

16                    **MR. REEVES:**  Your Honor, the Government also seeks a

17   100,000-dollar fully secured bond.

18                    **THE COURT:**  Right.

19                    **MR. REEVES:**  We have served warrants, seizure

20   warrants, as to two of Mr. Jilwan's accounts.  They are -- one

21   is at Schwab.  The last three numbers of the account number is

22   675.  The second account is at Fidelity.  The last three

23   numbers are 410.

24                    We believe that there's equity in the home of

25   Mr. Jilwan that would properly secure the bond, but all we

1    require or all we request is that it be fully secured.

2              **THE COURT:**  What does Mr. Jilwan intend to do,

3    Mr. Green?

4              **MR. GREEN:**  Yeah.  We would -- I've reviewed the

5    proposed terms and conditions of release, and we're in

6    agreement with all the terms and conditions.  Although no one

7    gets, perhaps, an uphill battle given your tone, we would ask

8    that he either be released on his personal recognizance or an

9    unsecured bond for the following reasons:

10             He's been in the Bay Area for about 22 years, all of

11   which he's worked for either Caltrans or BART as a project

12   manager.  His wife is here in court.  They've been married 22

13   years.  She's in the front row.  They've got a 17-year-old

14   who's living in the home, who is a senior in high school, who

15   will be graduating from, I think, Foothill.  They've got an

16   18-year-old at UC Davis.

17             No criminal record.  He's known about these charges

18   since April 30th of 2007 is when he got the first phone call

19   from the SEC, and has not changed residence or anything.  So

20   he's around for the long term.

21             **THE COURT:**  Well, again, this business of they've

22   known the charges for a long time is something, again, I hear

23   very commonly.

24             Is the Government proposing to file a lis pendens on

25   Mr. Jilwan's property?

1    **MR. REEVES:**  No, Your Honor.

2    **THE COURT:**  And the property that we're talking

3    about is in, it looks like -- I can't even read it --

4    pleasant -- Pleasant Hill?

5    **MR. GREEN:**  Pleasanton is his home address.

6    **THE COURT:**  That's Pleasanton, okay.

7    **MR. GREEN:**  The home address.

8    **THE COURT:**  Home address.  And that's a home that he

9    owns?

10   **MR. GREEN:**  Correct, with his wife.

11   **THE COURT:**  Well, so, basically, what's the

12   Government's reaction to what I'm being asked is a

13   100,000-dollar, in effect, a PR bond?  Is the Government

14   willing to accept that?

15   **MR. REEVES:**  The Government would like that $100,000

16   to be fully secured by his home.

17   **THE COURT:**  So you want him to post the home?

18   **MR. REEVES:**  Yes, I do, Your Honor.

19   **THE COURT:**  Do you know what the equity in the home

20   is?

21   **MR. REEVES:**  It exceeds $100,000.

22   **THE COURT:**  And he objects to posting the home?

23   **MR. GREEN:**  Yeah.  I'd ask that -- the one thing I

24   didn't mention is that the alleged profits from the insider

25   scheme --

1          **THE COURT:**  Uh.

2          **MR. GREEN:**  -- that's been sitting in this Fidelity

3     and Schwab account, you know, for this whole year.  It hasn't

4     been touched.  Well, a small amount has been touched, but the

5     money has been sitting there.  Once we knew the charges,

6     perhaps, would be filed, that money has just been sitting

7     there, so we have been cooperating.

8          **THE COURT:**  Well, look, I want to get this moving

9     today, so I think I know how we will deal with this.

10          All right.  I'm prepared to release everybody on

11    bonds as follows:

12          I'll accept the $100,000 for the moment.  I'm going

13    to have everybody go through Pretrial Services, and I'm going

14    to ask for postrelease reports; and I may -- I'll have this

15    matter come back to me.  I'll be back the week of the 18th; and

16    if necessary, we'll hold a hearing at some point.

17          And if Pretrial determines that there are additional

18    requirements, additional conditions of release, or release that

19    the bond amounts are inadequate, I'll listen to any

20    recommendation they make.

21          So let's start off with -- well, lets see, the one I

22    have in front of me is Emile Youssef Jilwan.  So I'm prepared

23    to release him on a 100,000-dollar bond and I'm going to do

24    this:  It will be secured -- well, for the moment it will be

25    unsecured by -- but he has to sign it and his wife has to sign

1    it.  Both of them are going to surrender their passports, and

2    I'm going to order -- in whose name is the home?

3            **MR. GREEN:**  Is both names or one name?  Both names,

4    and I'm not sure --

5            **THE COURT:**  All right.  Is the wife here?

6            **MR. GREEN:**  She is, and I don't know if she has her

7    passport.

8            **THE COURT:**  Would you come forward, please.

9            **MR. GREEN:**  Oh, okay.  She's got a trip scheduled

10   for July.

11           **UNIDENTIFIED SPEAKER:**  (Inaudible)

12           **MR. GREEN:**  No, but the issue of surrendering her

13   passport.

14           **THE COURT:**  Well, we can -- if things work out, we

15   can release her passport for the trip, but we're going take it

16   one step at a time.

17           **MR. GREEN:**  Okay.

18           **THE COURT:**  Would you identify yourself?

19           **MRS. JILWAN:**  My name is Marie Jilwan.

20           **THE COURT:**  And, as I understand it, you are the

21   wife of the defendant Emile Youssef Jilwan?

22           **MRS. JILWAN:**  Yes, Your Honor.

23           **THE COURT:**  All right.  And how many years have you

24   been married?

25           **MRS. JILWAN:**  22 years.

1          **THE COURT:**  Okay.  So you've been sitting through

2    court, you've heard the charges, you understand the charges

3    against your husband, the penalties he faces, and so on?

4          **MRS. JILWAN:**  Yes, Your Honor.

5          **THE COURT:**  So obviously that gives him some

6    incentive to flee, and you're being asked to help assure me

7    that he won't flee.  And for the purpose of getting him

8    released today, I'm willing to release him on a 100,000-dollar

9    bond, which you and he will both sign.  I'll explain to you the

10   terms and the conditions in a minute.  But all of the

11   defendants are going to have most of the same terms and

12   conditions.

13         But, in addition, do you have a passport?  It sounds

14   like you do.

15         **MRS. JILWAN:**  Not on me right now, Your Honor.

16         **THE COURT:**  But you have one?

17         **MRS. JILWAN:**  Yes, I do.

18         **THE COURT:**  All right.  I'm going to ask you to

19   surrender your passport.  Are you willing to do that?

20         **MRS. JILWAN:**  Yes, Your Honor, but I have --

21         **THE COURT:**  When you have your trip, what we'll do

22   is you'll just ask Pretrial Services, you know, like a week or

23   two, or something, beforehand to release your -- now, are you

24   planning to go by yourself?  I don't know where you're going.

25         **MRS. JILWAN:**  Yes, I am, Your Honor.  I'm going to

```
 1   Lebanon for my nephew's wedding.

 2              THE COURT:  Okay.  I will permit that --

 3              MRS. JILWAN:  Thank you.

 4              THE COURT:  -- unless something happens between now

 5   and then.

 6              PRETRIAL SERVICES:  Your Honor, Carol Mendoza for

 7   Pretrial Services.  We would not remain in possession of her

 8   passport.

 9              THE COURT:  No.  The clerk would have it.

10              PRETRIAL SERVICES:  Right.  So if --

11              THE COURT:  Oh, I would order the clerk to release

12   it.  Thank you for correcting me.  The clerk will have it.

13              It's just another way of assuring me that nothing

14   untoward will happen.  As I said, Mrs. Jilwan, I'm being asked

15   to release your husband on a bond that's less than I would

16   ordinarily release him on, so I'm trying to be careful.

17              Now, with respect to the home, I'm going to order

18   that while you're on release, the defendant shall not,

19   basically, encumber the property.  So the defendant shall not

20   sell, mortgage, or otherwise encumber.  And this is the

21   Knollbrook address.

22                    (Pause in proceedings.)

23              THE COURT:  So it reads -- I may have to make this

24   more, you know, clear in the future, but what I'm writing in

25   here is:  (reading)
```

1              "Defendant shall not sell, mortgage, or

2              otherwise encumber the Knollbrook property or do

3              anything to diminish the $100,000 amount of the

4              bond."

5         All right.  You can't hypothecate it.  You can't use

6    it as collateral.  I'm not going to give you an exhaustive

7    list.  And that's what I'm going to require for the moment, as

8    opposed to you actually physically posting it and getting it

9    appraised, and all the rest of that.

10         Now, if Pretrial comes back to me and says, "Well,

11   no, we've got some issues," I may change my mind and require

12   that it be posted.

13         So let me just find out from the Jilwans, is that

14   condition acceptable to you?

15        **DEFENDANT JILWAN:**  Yes.

16        **MRS. JILWAN:**  Yes, Your Honor.

17        **THE COURT:**  All right.  Now, let me move on then.

18   I'll explain to all of you the terms and conditions in a

19   moment, but let me just deal with the issue of security.

20         Now, in the case of Michael, let me just sort of...

21              (Pause in proceedings.)

22        **THE COURT:**  I guess the proposal there, it sounds

23   like is going to be somewhat similar; right?  That's the one

24   where the home is going to be liened, so I don't have to worry

25   about that issue as I did with these folks.

1          So it's basically a 100,000-dollar bond, which is

2    going to be simply secured by their two signatures.

3          So is Mrs. Kara here?

4          **MR. PETERS:**  She's not in court.  She's very nearby.

5    We just phoned her and she should be here within 10 minutes.

6          **THE COURT:**  All right.  And then we'll --

7          **MR. PETERS:**  We thought she was downstairs, but

8    she's very nearby and she's on her way; and, so...

9          **MR. REEVES:**  Your Honor, may I be heard?

10         **THE COURT:**  Sure.

11         **MR. REEVES:**  Is it your expectation that Mounir Kara

12   will in due course post the security for the 100,000-dollar

13   bond?

14         **THE COURT:**  Well, it doesn't sound to me like

15   there's going to be anything to post.  What will be the point

16   of posting it if you're going to put a lis pendens on it?

17         **MR. REEVES:**  I'm not talking about securing the bond

18   with his home.  I'm talking about securing the bond with cash,

19   either from him or from other source -- some other source

20   that's not encumbered and available to him.

21         **THE COURT:**  Okay.  I guess I'm very confused by what

22   the Government wants from these folks because we don't usually

23   deal with cash here.

24         So you want each of them to post $100,000 cash?

25   You're not interested in the property?

1            **MR. REEVES:**  In the case of Emile Jilwan, we are

2   satisfied with the property.

3            **THE COURT:**  Okay.

4            **MR. REEVES:**  In the case of Michael Mounir Kara, the

5   property is encumbered, so that will not do.  So we would like

6   cash.

7            **MR. PETERS:**  Your Honor, as I understand it, they're

8   seizing his accounts which have all of his money.  They're

9   putting a lis pendens on his house where he has $1.3 million in

10  equity where he lives with his wife and his two children; one

11  of them goes to Davis, one of them goes to high school out in

12  Contra Costa County.

13            It appears to us, most respectfully, that a

14  100,000-dollar bond signed by Mr. Kara and his wife, when if he

15  were to flee, he would then lose his home because he wouldn't

16  be here to contest the forfeiture, it functions very much as if

17  he had posted his house.  And I don't know what else we can

18  post if they have -- are seizing all of his assets.  And that

19  by itself would seem to be a powerful incentive for him to

20  return to deal with the charges, much like the posting of bail.

21            **MR. REEVES:**  Your Honor, based on our --

22            **THE COURT:**  I don't know anything about this

23  gentleman, so I'm accepting whatever it is you all are telling

24  me as to his financial abilities.

25            **MR. REEVES:**  I understand that, Your Honor.

1      **THE COURT:**  So if the decision -- if the Government

2   is satisfied in releasing him on a 100,000-dollar bond, but

3   there are no assets to secure it, then I'm not quite sure what

4   the Government is asking me to do.

5      **MR. REEVES:**  I'm asking for a commitment from the

6   defendant that the bond be fully secured; that the money, in

7   fact, be posted within approximately one week where the sort of

8   interim adjourn date that we had raised.  That will allow

9   counsel an opportunity to consider what is and is not available

10  to the defendant.  And if that amount becomes impossible, we

11  don't think it necessarily is, then he can be heard about an

12  appropriate bond amount.

13      But in the first instance, we're asking that he

14  commit to the bond and that the Court have the expectation that

15  the actual cash securing the full amount be posted within seven

16  days.

17      **MR. PETERS:**  Your Honor, I believe that the purposes

18  of bail can be effectively achieved by having Mr. Kara and his

19  wife sign a 100,000-dollar bond.

20      **THE COURT:**  I don't understand what's going on here,

21  but I'm going to cut through this.  I'm just going to require

22  them to post the property.  I don't understand the Government's

23  lis pendens position.  I have to say that in 13 years I've

24  never heard the Government -- is this some new policy of

25  requiring cash bonds, or is this just something driven by this

1    case?

2              **MR. REEVES:**  It's not new to my knowledge, although

3    I'll defer to the Court.  It's what I've discussed --

4              **THE COURT:**  I've never been asked to impose a cash

5    bond.  I'm willing to do it, but what I'm basically being

6    asked -- I'm not going to deal in, you know, I wouldn't call it

7    futilities, but I just want to figure out whether these folks

8    are releasable.

9              If the Government thinks they're releasable, I'm

10   willing to release them; or if the Government wants to move to

11   detain them, I'll entertain a motion to detain.  And I'll get a

12   Pretrial Services report and I'll make my own independent

13   determination based on information Pretrial provides me on

14   whether the folks are releasable.

15             I think what I'm prepared to do today is one of two

16   things, and what I'm thinking of doing is simply just asking

17   him -- release him on a 100,000-dollar bond secured by the

18   equity in the property.  That way if he violates, the property

19   will be posted.

20             The one thing about what the Government is

21   suggesting is, if they simply have a lien on it, if he's got

22   this much equity, you know, he may still be able to do things

23   with the property.  And, so, they may get to a situation where

24   at the end of it all, if the property hasn't been posted, they

25   look to collect and there may not be much left.  But if I order

1    the property posted, then I'll know that, in effect, I think

2    we've got a first call.

3            **MS. GRAY:**  Good morning, Your Honor.  Susan Gray on

4    behalf of United States Asset Forfeiture Unit.

5            Your Honor, actually since the lis pendens has been

6    filed on it, I don't believe that it could be posted.

7            **THE COURT:**  Oh, it has already been filed?

8            **MS. GRAY:**  As of this morning when the Indictment

9    was unsealed.

10           Your Honor, it's my understanding that there are --

11   although we have seized the assets in several accounts for this

12   particular defendant, there is another account; and as the last

13   I checked, there was approximately $80,000 in that account.

14   Now that might have changed in the last month or so.

15           But I would concur with Mr. Reeves and suggest very

16   strongly that if his wife is present in the building, if we

17   could have both of them on the bond, I think that within the

18   next week they would be able to come up with the cash.

19           If I might, Your Honor, as you know, I've just come

20   back to this line of work after being away.  I do know that in

21   some instances you can go and put down 10 percent and with a

22   bails bondsman and get a bail bond, someone who will come in

23   with far less expenditure of cash and post a bond; but I

24   would --

25           **THE COURT:**  Sure, but you know those bail bonds are

1    rarely used in this court and, you know, ultimately that

2    becomes a matter of just money, which is why we usually do

3    things like tie up family homes or things that really provide

4    people with an incentive to stay.

5            I mean, the difficulty I'm having with the

6    Government's position, this is a new position.  You know, I've

7    now run into the Rule 46 business; and if this is going to be

8    new business with the Government, you know, we'll deal with it

9    in the usual fashion.

10           But, you know, there's some substantial body of

11   Federal Law which talks about the need to have bonds that

12   assures somebody's appearance.  This is not an effort of simply

13   trying to collect money.

14           **MS. GRAY:**  But my understand --

15           **THE COURT:**  And to me, if I have somebody's home

16   tied up and if I know that their wife and their kids are living

17   in the home and that's the only home they have, that tells me

18   that, you know, they may really not want to evict their wife

19   and kids.  It means to me a lot more than saying, "I've got

20   $80,000 or $100,000 in cash with somebody."

21           **MS. GRAY:**  That may be --

22           **THE COURT:**  That's one of the reasons why

23   historically we haven't had much use of bail bonds; because, as

24   you point out, you can walk in and put $10,000 down.  Some

25   bondsman will come in and post a 100,000-dollar bond, and then

1   where are we?

2           **MS. GRAY:**  Your Honor, I agree with Your Honor, your

3   feelings about posting of property, and I think that's why the

4   Government is happy to go forward with that particular

5   defendant with the unencumbered property.  But it is the

6   Government's position that that particular property, the Walnut

7   Creek property, was purchased with proceeds of the criminal

8   activity; and, therefore, that's why --

9           **THE COURT:**  I understand that.  So what it boils

10  down to is this:  I'm being told you're proffering that he's

11  got a lot of money, and they're proffering he doesn't have a

12  lot of money.  And I'm trying to make a decision today because

13  I'm unavailable tomorrow, and I'm reluctant to just throw this

14  into Chief Judge Larson's hands.  I may have to, because I

15  don't know of any way of resolving that this morning.

16          **MR. REEVES:**  Your Honor, we are proffering that he

17  has enough money to do it, and they are proffering that they're

18  not sure given the asset seizure.  So what I propose is that we

19  give an appropriate amount of time for us to consider this; and

20  if it imposes an unreasonable hardship, that the Court then

21  permit both sides to be heard.

22          **MR. PETERS:**  Your Honor, normally we would post a

23  house.  Mr. Kara --

24          **THE COURT:**  Well, it doesn't sound like you can.

25          **MR. REEVES:**  Right.

1          **THE COURT:**  It sounds like they've already filed a

2    lis pendens.

3          **MR. PETERS:**  They've made it impossible for us to

4    post a home --

5          **THE COURT:**  That's my problem.

6          **MR. PETERS:**  -- which would be the most sensible

7    thing; but since that was their decision --

8          **THE COURT:**  Well, but, no, what they're saying is

9    that's because they think that it was the fruit of the

10   underlying crime.

11         **MR. PETERS:**  He had a -- Your Honor, he had prior

12   home in -- where was the prior home?

13         **DEFENDANT MOUNIR FAYEZ KARA:**  In Vallejo.

14         **MR. PETERS:**  -- in Vallejo with substantial

15   equity --

16         **DEFENDANT MOUNIR FAYEZ KARA:**  One million.

17         **MR. PETERS:**  -- which he sold and then used that

18   equity to purchase this home.  Some money from his stock

19   trading was also used to purchase the home, but he had a

20   million dollars in equity from his prior home.  It's where his

21   daughter and son and wife and he lived.  To post --

22         **THE COURT:**  All right.  Look, what I'm going to do

23   today is this, we'll have to cheat.  I'm prepared to release

24   him today on a 100,000-dollar bond signed by he and his wife.

25   I'm going to leave it as a, quote, secured bond; and I'm going

1    to talk to Judge Larson, and I'll put this matter back on

2    calendar --

3            THE CLERK:  Do you want to do May 11th because

4    that's when we'll have to do ID of counsel?

5            THE COURT:  Fine.  May 11th before Judge Larson to

6    sort it out.  So by May 11th either you and the Government

7    agree on what shall be the security; or Judge Larson, and I'll

8    talk too him about it, and he'll decide it for you.

9            And I'm going to have a Pretrial Services report

10   made.  They'll give us information about possible securities,

11   what's available, et cetera, and we can make the usual kind of

12   decision that we make in this court.

13           So, but the wife, as I understand, is not here,

14   so --

15           MR. REEVES:  She should be here momentarily.

16           MR. PETERS:  She's right here.

17           DEFENDANT MOUNIR FAYEZ KARA:  She's here.

18           THE COURT:  She is here.

19           All right.  And then let's just see.  So with

20   respect to -- the easiest one, I guess, is going to be Maher,

21   because, as I understand it, he is going to post $100,000 in

22   cash.

23           MR. FRECCERO:  Yes, Your Honor.

24           THE COURT:  Okay.  So let me go through then the

25   terms and conditions.

1          Where's the wife?  Let's see, where is Michael's
2    wife?

3          **MRS. KARA:**  Right here.

4          **MR. PETERS:**  You can come on up, Mariam.

5          **THE COURT:**  Here, let's get some information.  We're
6    going to have to get some more information.

7          So would you identify yourself?

8          **MRS. KARA:**  Mariam Kara.

9          **THE COURT:**  All right.  And how do you spell Mariam?

10         **MRS. KARA:**  M-A-R-I-A-M, Your Honor.

11         **THE COURT:**  All right.  And your age?

12         **MRS. KARA:**  I'm 45.

13         **THE COURT:**  And you are Michael Kara's --

14         **MRS. KARA:**  Wife.

15         **THE COURT:**  -- wife?  And how long have you been
16   married?

17         **MRS. KARA:**  In May it will be 21 years.

18         **THE COURT:**  Okay.  Now, I don't think -- I think you
19   just got here.  So you weren't here when we read the charges;
20   am I correct?

21         Your husband has been caught up in a situation which
22   he and the other gentleman here -- are the two Karas related?

23         **MR. FRECCERO:**  I beg your pardon?

24         **THE COURT:**  Are the two -- are Michael and --

25         **MR. FRECCERO:**  They are brothers, Your Honor.

1          **THE COURT:**  He and his brother and Mr. Jilwan have

2     been charge with a variety of conspiracies, securities fraud

3     allegations.  The penalties are quite serious.  For some of

4     them it's up to 30 years in prison.

5          We're trying to work out a method of releasing

6     everybody today, and Michael's situation is a little more

7     complicated than the others because we've had this dispute over

8     whether he has assets for a 100,000-dollar secured bond.

9          The way I'm going to deal with it is I'm going to

10    ask you and he to sign a bond today with your signatures, and

11    then we will just figure out in the next week or so whether

12    there are sufficient assets to secure the bond or what else

13    will be done.

14          So the one other thing I'm going to ask you to do

15    is, do you have a passport?

16          **MRS. KARA:**  I don't have it on me.

17          **THE COURT:**  But you have one?

18          **MRS. KARA:**  Yes, sir.

19          **THE COURT:**  All right.  I'm going to ask you to

20    surrender it to the court, and then we'll just have to take

21    everything one step at a time.

22          All right.  So, look, folks, let me explain to each

23    of you the terms and conditions of release.

24          First of all, so I'm now talking to --

25          **MR. GREEN:**  Your Honor, I'm just going to ask for

1    some minor exceptions as far as the travel goes -- not travel,

2    but I know it's typical to have restrictions within the

3    Northern District.   They've got a baptism scheduled in the

4    Eastern District to go to in a couple weeks, and then the son

5    in UC Davis (inaudible).

6            **THE COURT:**  I don't have a problem with doing it,

7    but we have to do it in the ordinary fashion unless the

8    Government is willing to make some exceptions.

9            I mean, the terms of the bond presented to me was

10   travel restricted to the Northern District.   It's easy to make

11   it Northern and Eastern Districts.   That would solve all these

12   problems.   If that troubles you, we can do what we do in every

13   case, which is you get permission from Pretrial Services.

14           **MR. REEVES:**  And that would be what the Government

15   asks.   I was not aware of Mr. Jilwan's circumstance.   I am

16   aware of a circumstance relating to the Kara family where their

17   mother is in Vallejo, California; and the Government would, for

18   the two Kara defendants, be permitted to expand the geographic

19   limitation of where they can go to include Vallejo for the

20   purpose of meeting with their mother.

21           All we ask, Your Honor, is that they be restricted

22   in their travel to this District and that they seek the prior

23   permission of Pretrial Services with the exception of Vallejo

24   as to the Karas' mother.

25           **THE COURT:**  I think that's the way it's going to

1    have to start off.

2              **ALL:**  That's fine.

3              **THE COURT:**  Now what will happen is this:  If we go

4    on for a period of time and there are no problems with the

5    bond, then the Government may be willing to agree to loosen

6    some of the restrictions, for example, Eastern and Northern

7    Districts, or sometimes they drop their travel restriction

8    entirely and just stay with the surrender of the passports.

9              But, you know, again, I'm taking a lot of things at

10   faith value and, so, I'm going to start off being cautious.  So

11   let's just see.

12                   (Clerk and Court conferring.)

13             **THE COURT:**  All right.  So Mariam Kara will

14   surrender her passport, and give it to your husband's attorney

15   and he'll surrender it to -- it really has to wind up at the

16   Clerk's Office.  And today is the 30th, so let's make it, say,

17   May 6th for both Mariam Kara and you'll have to get further

18   information from Mrs. Jilwan, too.

19             **THE CLERK:**  Mrs. Jilwan, your first name please.

20             **MRS. JILWAN:**  Marie, M-A-R-I-E.

21             **THE CLERK:**  Thank you.

22                   (Pause in proceedings.)

23             **THE COURT:**  Is the mother actually in Vallejo?

24             **MR. PETERS:**  Yes, Your Honor.

25             **THE COURT:**  All right.

1          (Pause in proceedings.)

2          THE COURT:  Now, I'm just curious, somebody raised

3   something about a baptism.  Is this something that's imminent?

4          MR. GREEN:  May 8th you said?

5          MRS. KARA:  May 9th.

6          THE COURT:  May 9th.  Does the Government have any

7   objection?  Where's the baptism?

8          MR. GREEN:  Tracy.

9          MRS. KARA:  Tracy.

10          THE COURT:  In Tracy.

11          MR. REEVES:  Not if Pretrial Services is notified

12   and aware of it, and the details of that trip are provided to

13   them, no, Your Honor.

14          THE COURT:  All right.  So I'm going to simply say

15   that Mr. Jilwan may -- defendant may travel to Tracy, which is

16   not in this District -- and on which date is that?

17          DEFENDANT JILWAN:  May 9th.

18          THE COURT:  -- on May 9th, after clearing trip with

19   Pretrial.  So, you know, just give them the details where

20   you'll be and that sort of thing.  So that will take care of

21   the immediate matter.

22          Now -- all right.  So let's just figure out.  The

23   next appearances we're going to have are different.  So for

24   Michael's next appearance, it's May 11th at 9:30.

25          For Maher's next appearance is going to be

1    May 18th --

2              **MR. FRECCERO:**  Right.

3              **THE COURT:**  -- unless we have a problem with --

4              **MR. FRECCERO:**  That's correct, Your Honor.

5              **THE COURT:**  Right.

6              **MR. FRECCERO:**  I understood that if we do not make a

7    general appearance --

8              **THE COURT:**  Right.

9              **MR. FRECCERO:**  -- then he needs to be here on the

10   11th --

11             **THE COURT:**  Right.

12             **MR. FRECCERO:**  -- for ID of counsel.

13             **THE COURT:**  All right.  I'll put down May 11th and

14   May 18th.

15             May 11th at 9:30 will be before Judge Larson.  If

16   you file a general appearance, he doesn't have -- before that

17   date, he doesn't have to appear.  May 18th at 10:00 a.m. before

18   Judge Patel.

19             Judge Larson sits next-door.  Judge Patel sits on

20   the 18th floor.

21             So -- and then Mr. Jilwan's next appearance is

22   May 18th before Judge Patel.

23             Okay.  So, folks, listen up.  Each of you is going

24   to be released on a 100,000-dollar bond with varying degrees of

25   security.  What that means is, if you violate the terms and

1    conditions of the bond, the Government can seek a civil

2    judgment against you in an amount of up to $100,000.

3            Now, in the case of, for example, the cash being

4    posted, they could then seize the cash to execute the judgment.

5    If we wind up posting property, they could seize the property

6    to satisfy the judgment if it's not satisfied elsewhere.

7            Now, Mrs. Jilwan and Mrs. Kara, you're going to be

8    asked to sign on the bond, which means the Government could

9    seek a civil judgment against each of you for up to $100,000 if

10   your husband violates the terms and conditions of the bond.

11           Does anybody have any questions about that?

12           **MR. GREEN:**  That it's unsecured today, because we

13   don't have a signature, but that within a week it will have to

14   be secured by the property, that's my understanding.

15           **THE COURT:**  No.  The Jilwans, as far as I'm

16   concerned, unless the Government wants something different, I'm

17   satisfied with the two signatures.

18           **MR. GREEN:**  Okay.  Thank you.  I'm sorry.

19           **THE COURT:**  And the order that they do not sell,

20   mortgage --

21           **MR. GREEN:**  Oh, okay.

22           **THE COURT:**  -- you know, encumber, hypothecate,

23   et cetera.

24           **MR. GREEN:**  I'll be quiet.

25           **THE COURT:**  Okay.  That satisfies me.  If the

1   Government has any problems, I said, you know, down the line we

2   might have to -- we're doing a lot of things today and I'm

3   doing them on faith.  So there may be a lot of movement because

4   each of you is going to have to go through Pretrial Services.

5          The situation -- it's only the situation with

6   respect to Michael Kara that's up in the air, so to speak.

7   They're the ones that have got to agree to something by next

8   week or by May 11th Judge Larson will render a decision for

9   you.

10          Now let me just say to the two wives, what you're

11   doing signing onto these bonds is a voluntary act.  If at any

12   time you become uncomfortable and no longer want to act as we

13   call it, you know, a surety in effect, you can bring your

14   husband back to court and any judge can relieve you of your

15   responsibilities under the bond.  What will happen to your

16   husband at that point I can't predict.

17          Now, here are the other terms and conditions.  So,

18   first of all, does each defendant promise to appear at all

19   proceedings ordered by the Court, to make the next appearance

20   that I've announced, and surrender to service of any sentence

21   that may be imposed?

22          Mr. Jilwan, do you promise?

23          **DEFENDANT JILWAN:**  Yes, Your Honor.

24          **THE COURT:**  And, Mr. Maher Kara, do you promise?

25          **DEFENDANT MAHER FAYEZ KARA:**  Yes, Your Honor.

1          **THE COURT:**  And, Mr. Michael Kara, do you promise?

2          **DEFENDANT MOUNIR FAYEZ KARA:**  Yes, Your Honor.

3          **THE COURT:**  All right.  While on release, each of

4    you is not to commit any federal, state, or local crime.

5          Each of you is not to harass, threaten, intimidate,

6    have anything to do with anyone who may be a witness, a victim,

7    an informant, a law enforcement officer, anyone involved in the

8    underlying criminal investigation.

9          Now, I've got this question.  I don't know where

10   each of you work.  I know that accounts are being seized.  I

11   don't know whether you have ongoing relations, for example,

12   with Charles Schwab that have been mentioned.  If you do, then

13   we need to work out if they continue to have dealings with

14   Charles Schwab, is the Government going to consider that -- are

15   they possible, you know, witnesses, informants, et cetera?  Can

16   we get into any awkward situations?

17         **MR. REEVES:**  Not as to the investment brokerage

18   houses, I don't believe that would be necessary; but as to the

19   actual witnesses in this case, absolutely, Your Honor.

20         **THE COURT:**  Well, I don't know who the actual

21   witnesses are.

22         **MR. REEVES:**  I understand that.  Charles Schwab

23   Brokerage and Fidelity Investments are not -- are not

24   technically witnesses that I would consider necessary to

25   include within the ambit of that direction.

1           THE COURT:  All right.  Well, if there's anybody in

2    particular that you want them to stay away from, you've got to

3    notify them.  And if you don't know who they are today, you

4    can, you know, give a list to their lawyers; but, you know, I

5    need to have, in this kind of case, a little bit of finality

6    because it may not jump out to people who they are and are not

7    supposed to talk to.

8           MR. REEVES:  I understand that.  I understand that's

9    our burden.  I will consider that and I will inform the Court

10   if I want to be more specific.  Thank you, Your Honor.

11          THE COURT:  I would simply caution the defendants

12   that you don't want to do anything that gets you into any

13   trouble.  If you have any question, you're not sure whether you

14   ought to talk to somebody, just ask your lawyers.  You can

15   always talk to somebody if your lawyer is present.

16            Now, each of you your travel is being restricted to

17   the Northern District of California.  It's basically the

18   greater Bay Area; but, as you've heard, Vallejo, for example,

19   once you cross the Carcinas Bridge, you're in a different

20   District.  You'll get a map that tells you where you can and

21   can't go.  For the two Kara brothers, I'm going to allow them

22   to travel to Vallejo to visit their mother.

23            You are to report in person immediately --

24   where's -- I guess it's all going to be done in San Francisco?

25   Several -- one of them -- two of them live in the East Bay.

1          **PRETRIAL SERVICES:**  Yes, Your Honor, but we will

2     interview them initially in the City before they leave the

3     building today.

4          **THE COURT:**  Okay.  So what's going to happen, just

5     so that I'll caution you, when you leave here, you'll go

6     upstairs to the Marshal's Office for processing, because you're

7     not actually going to go into custody -- well, maybe I should

8     ask.  Have they already been processed?

9          **UNIDENTIFIED SPEAKER:**  They've been processed --

10         **THE COURT:**  Whose custody, so to speak, are they in

11    now?

12         **UNIDENTIFIED SPEAKER:**  Sir, they've been processed

13    by the FBI.  However, it's my understanding that the Marshal's

14    (inaudible).

15         **THE COURT:**  Right.  So they'll have to go up to the

16    Marshal's Office.  Then when you're through with the Marshal,

17    go see Pretrial Services.  They'll set up the reporting

18    requirements, and then you'll be free to go.

19         But I'm going to ask for a postrelease report, and

20    you'll have to deliver that to Judge Larson, and I'll talk to

21    Judge Larson about this case.

22         **PRETRIAL SERVICES:**  And, Your Honor, that would be

23    for the May 11th or --

24         **THE COURT:**  Yes, unless you see something that

25    requires something more urgent, in which case just send him the

1    report and we'll put it back on calendar; but, otherwise, I'll

2    tell him it will be May 11th.

3              Now if it turns out, though, don't -- let me ask you

4    to do me this favor, or Judge Larson this favor:  May 11th is a

5    Monday.  Could you try to have the report within a week, by

6    May 7th?

7              **PRETRIAL SERVICES:**  Yes, Your Honor.

8              **THE COURT:**  Because he'll need to make a decision as

9    to whether he wants to bring people back on calendar, because

10   not everybody is -- most folks are only going to be coming back

11   on the 18th.  Okay?  So he'll see the report and decide whether

12   anything needs to be done, and then sometimes it may not even

13   require an appearance.  You know, parties may consent to an

14   additional requirement.

15             Each of you -- so all -- as I understand it, the FBI

16   has everybody's passports expect the two wives.

17             **MR. REEVES:**  Your Honor, and I'd like to make a

18   record.  I have the passports in my hand.  They have gone from

19   each of the defendants --

20             **THE COURT:**  What countries are they?

21             **MR. REEVES:**  They're all U.S. passports.

22             **THE COURT:**  All right.  Let me find out.  Does

23   anybody hold a passport from any other country?

24             **UNIDENTIFIED SPEAKER:**  No.

25             **THE COURT:**  Okay.  All right.

1          **MR. REEVES:**  And I'd like at this point to pass --

2     they have been surrendered by the defendants to the FBI this

3     morning as part of the arrest processing, and at this time I

4     would like to make a record that I am providing them to the

5     District Court, if I may, or how would you like me to proceed?

6          **THE CLERK:**  You can give them to counsel and they

7     have to go to the Clerk's Office.

8          **THE COURT:**  Yeah.  They have to be surrendered to

9     the Clerk's Office.

10          **MR. REEVES:**  Okay.  So I'm returning it to counsel

11     if I may.  Let's see, I'm returning the passports to counsel.

12          **THE COURT:**  Counsel, just take them up to the

13     Clerk's Office and get a receipt for them.

14          **UNIDENTIFIED SPEAKER:**  Will do.

15          **THE COURT:**  Now, that -- and then the two wives will

16     surrender their passports by May 6th.

17          So where are we?  Okay.  Each defendant -- and while

18     you're on release, let me just make this clear, none of the

19     defendants may apply for passports or travel documents from any

20     other country.

21          No defendant may possess a firearm, destructive

22     device, or other dangerous weapon.

23          No defendant shall use alcohol to excess or use or

24     possess any narcotic or other controlled substance without a

25     legal prescription.  I'll just caution people that there is no

1     legal federal prescription for marijuana.

2              Now, this is important -- okay.  Defendant shall

3     have no contact with any co-defendant out of the presence of

4     counsel, except if related by family.  So basically that means

5     that the Kara brothers can have contact, but neither of the

6     Karas can have any contact with Mr. Jilwan unless counsel is

7     present.  I don't know.

8              Are you related to these folks, Mr. Jilwan?

9         **DEFENDANT JILWAN:**  No.  But there are times when my

10    kid -- well, his son and my son go to Davis and they share

11    rides.

12        **THE COURT:**  Well, I'll ask the Government.  It

13    doesn't apply to your sons.

14        **MR. REEVES:**  It's not your family.

15        **THE COURT:**  But what are you saying?

16        **DEFENDANT JILWAN:**  But I may have go pick up the son

17    from his house or my wife has to go pick up (inaudible).

18        **THE COURT:**  All right.  I think we can probably

19    figure out a way of dealing with that unless that troubles the

20    Government.

21        **MR. REEVES:**  I think it's an appropriate rule.  I'm

22    sure there can be an accommodation made and maybe alternatives

23    surrounding that.

24        **THE COURT:**  It sounds like it troubles the

25    Government.  So what you're going to have to do in those

1    circumstances is figure out some way, like, don't go in the

2    house or have your wife go in the house, or do something.

3              **DEFENDANT JILWAN:**  No.  I normally don't.  My wife

4    does.

5              **THE COURT:**  Okay.

6              **MRS. JILWAN:**  I usually pick them up and drop them

7    off.

8              **THE COURT:**  Okay.  So no restrictions on the

9    children being together.  Just, again, I'm just -- this may be

10   one of those -- well, this is actually a difficult restriction,

11   it's a common restriction, because of a whole -- I won't go

12   into the details.  Your attorney can explain it to it.  But you

13   can have contact, as I say, if counsel are present.

14             Now, the defendant shall not change residence

15   without prior approval of Pretrial Services.  So that goes to

16   each one of you.  You have to live at the home that's on here.

17             And then the only other -- we've already talked

18   about the Vallejo condition.  I've explained to the Jilwans

19   that they cannot sell, mortgage, pledge as collateral, do

20   anything to encumber their property while they're on release.

21   And I'm allowing Mr. Jilwan to travel to Tracy on May 9th after

22   clearing the trip with Pretrial Services.

23             So those are the terms and conditions of release.

24   So let's kind of go around the room, and I guess I'll start

25   with Michael.

1          Are you willing to be released on this bond?

2          **DEFENDANT MOUNIR FAYEZ KARA:**  Yes, sir.

3          **THE COURT:**  Now let me explain to all of you, in

4     addition to the civil consequences, which I've explained,

5     that's the 100,000-dollar judgment, if you violate any of the

6     terms and conditions of release, there are other consequences,

7     criminal consequences, none of which are pleasant.

8          You can be subject to immediate arrest and

9     detention.

10          You could be subject to contempt of court charges

11     because you will have broken one of the promises you just made

12     me.

13          And if you fail to appear, you could be subject to

14     additional federal criminal charges for failing to appear as

15     promised, and the penalties for those are quite substantial,

16     probably more substantial than what you now face, and they're

17     explained on the back of the form which you'll get.

18          So assume that while you are on release, your life

19     is sort of under a microscope.  Make your appearances.  Behave

20     yourself.  If you have any doubt at all about what you're

21     doing, then just ask your lawyer or ask Pretrial Services,

22     depending on what the question is.

23          Okay.  So, Michael, you are willing to be released

24     on this bond and, Mariam, you're willing to sign this bond?

25     That's a yes?

1          **MRS. KARA:**  Yes.

2          **THE COURT:**  All right.  And let's go around to --

3          **MR. PETERS:**  Your Honor, if I may, just to clarify

4    one thing.  Mr. Kara, and I've told Mr. Reeves this, does own

5    several lawful firearms and we just need to -- need a couple of

6    days to figure out how to comply with that condition, and

7    that's something Mr. Reeves and I said we would discuss.  But I

8    didn't want to leave that unsaid, because, obviously, as soon

9    as he signs the bond, he goes -- he does have some lawful

10   firearms.

11         **MR. REEVES:**  That's acceptable to the Government,

12   Your Honor.  It's another thing that I hope to have buttoned

13   down by the May 11 adjourn date before Judge Larson.

14         **THE COURT:**  Let me just say, this is going to

15   trouble Pretrial Services.

16         **PRETRIAL SERVICES:**  I just wanted to offer a remedy.

17         **THE COURT:**  Oh.

18         **PRETRIAL SERVICES:**  Well, Pretrial Services often

19   deals with this, and we actually instruct the person how to

20   deal with it --

21         **THE COURT:**  Oh.

22         **PRETRIAL SERVICES:**  -- whether they're lawful or

23   not, but we require that they fulfill that condition.  So we

24   work with them.

25         **THE COURT:**  Okay.  I'll leave it to Pretrial

```
1   Services.
2             Now let me move on to Maher.  You've heard me
3   explain the terms and conditions?
4             DEFENDANT MAHER FAYEZ KARA:  Yes, Your Honor.
5             THE COURT:  And are you willing to be released on
6   this bond?
7             DEFENDANT MAHER FAYEZ KARA:  Yes, Your Honor.
8             THE COURT:  All right.  And, Mr. Jilwan, you've
9   heard me explain the terms and conditions and the consequences.
10  Are you willing to be released on this bond?
11            DEFENDANT JILWAN:  Yes, Your Honor.
12            THE COURT:  Okay.  And, Mrs. Jilwan, Marie Jilwan,
13  you're willing to sign this bond as well?
14            MRS. JILWAN:  Yes, Your Honor.
15            THE COURT:  All right.  Let me present the bonds for
16  signature.
17                   (Pause in proceedings.)
18            THE COURT:  And the -- Mr. Maher Kara, you're going
19  to post that check today?
20            DEFENDANT MAHER FAYEZ KARA:  Yes, Your Honor.
21            THE COURT:  And today is the --
22            THE CLERK:  30th.
23            THE COURT:  By 30 April.
24            MR. FRECCERO:  We have it made out to "Clerk of the
25  United States District Court," would that be sufficient?
```

1          **THE CLERK:**  That's fine.

2          **THE COURT:**  I believe so.

3          **MR. FRECCERO:**  Okay.  Thank you.

4                    (Pause in proceedings.)

5          **THE COURT:**  All right.  I'm going to accept all of

6     the bonds.

7                    (Pause in proceedings.)

8          **THE COURT:**  Okay.  So before I return them to agent

9     custody, are there any other issues I have to deal with this

10    morning?

11         **MR. REEVES:**  Not for the Government.  Thank you,

12    Your Honor.

13         **MR. FRECCERO:**  I don't believe so.

14         **THE COURT:**  All right.

15         **MR. GREEN:**  I don't believe so, Your Honor.

16         **THE COURT:**  Then are you -- then are the attorneys

17    going to escort them up to the Marshal's Office?

18         **MR. FRECCERO:**  I will, Your Honor, if they're

19    released from the agent's custody.

20         **THE COURT:**  I can release them right now.  If

21    they're not, I'll just have the agents show them upstairs.

22         **MR. GREEN:**  We're happy to take them.

23         **MR. FRECCERO:**  We're happy to take them.

24         **THE COURT:**  All right.  Fine.  Then I'll release the

25    agents.  I'll ask the attorneys to take their clients up to the

1    20th floor to the Marshal's Office for processing, and then

2    they have to go to Pretrial Services, and then they're free to

3    go on their present -- on the terms and conditions of the bond.

4            All right.  Good day, folks.

5            **ALL:**  Thank you, Your Honor.

6               (Proceedings adjourned at 11:08 a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6            I certify that the foregoing is a true and correct

7   transcript, to the best of my ability, of the above pages of

8   the official electronic sound recording provided to me by the

9   U. S. District Court, Northern District of California, of the

10  proceedings taken on the date and time previously stated in the

11  above matter.

12           I further certify that I am neither counsel for,

13  related to, nor employed by any of the parties to the action in

14  which this hearing was taken; and, further, that I am not

15  financially nor otherwise interested in the outcome of the

16  action.

17

18  _Kelly Bryce_____   06/14/09

19          Signature of Transcriber      Date

20

21

22

23

24

25